**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Henry PULANCO, Appellant.**

Superior Court of Pennsylvania.

Submitted April 29, 2008.

Filed July 23, 2008.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Michael D. Dautrich, Reading, for appellant.

BEFORE: LALLY–GREEN, SHOGAN, and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Appellant, Henry Pulanco, purports to appeal *nunc pro tunc* from the judgment of sentence entered on August 16, 2004. Upon review of the unique procedural history of this case, we are constrained to vacate the order allowing Appellant to file an amended Pa.R.A.P. 1925(b) statement *nunc pro tunc,* which in effect, reinstated his direct appeal rights. We remand this matter for further proceedings consistent with this opinion.

¶ 2 A prior panel of this Court summarized the relevant facts of this case in an unpublished memorandum as follows:

On [September 18, 2003], Reading City Police officers and Pennsylvania State Police officers were acting jointly to execute a search warrant which had been issued for 109 South 5th Street—a building described in the "Application for Search Warrant and Authorization" as a three story row apartment building. The search warrant application further specified "the rear 2nd floor apartment displays the number 5 on an exterior white door."

The Affidavit of Probable Cause on which the warrant was based indicated that on September 3, 2003, undercover

State Police Trooper Teresa Cloman and a confidential informant went to the rear parking lot of 107 and 109 South 5th Street, and bought heroin. The transaction involved Trooper Cloman handing money to a woman on the 107 property, who handed it through a chain link fence to a man on the 109 property. The man then entered 109, apartment 5, re-emerged, and handed the woman a plastic bag, which she, in turn handed to Trooper Cloman. It was later determined that the bag contained heroin.

A second transaction occurred on September 16, 2003, at which time Trooper Cloman entered the second floor apartment of 107 South 5th Street and told the woman she wanted "one bundle." The woman put her head out an open window and shouted across to two men in the adjacent second floor apartment of 109 South 5th Street. In response to the woman's request for "uno," one man nodded his head and exited the apartment. The woman followed suit, returning a minute later with a bag of what was later determined to be heroin.[1]

On the day the search warrant was executed, police approached 107 and 111 South 5th Street from the rear. Police observed Anthony Correa standing on the second floor fire escape of 111, next to an open apartment door bearing the number 5. He was one of the persons identified as a target by the search warrant. Correa was directed not to move, he did as instructed, and was handcuffed. Police then entered the door, and observed a small room and a bathroom, both of which were empty. They observed wires, including an orange ex-

---

* Retired Senior Judge assigned to the Superior Court.

1. During these operations, Trooper Cloman mistakenly believed that the building situated next to 107 South 5th Street bore the sequential number 109, when, in fact, it was numbered 111 South 5th Street.

tension cord plugged into a refrigerator, traveling through an open closet door. Police entered the closet, and observed the wires traveling under a second, closed, door, which was partially blocked by a bar hanging horizontally from the bare stud walls of the closet. A few items of clothing hung from the bar. The second door was fitted with keyless latches, which were open at the time. Under these circumstances, police believed that the door led into additional rooms of the same apartment. When police opened the second door, it led to a kitchen. They observed Pulanco, and ordered him to put his hands up and not move. Instead, he stepped into another room, and police followed, observing Pulanco and co-defendant Manuel Jiminez, as well as heroin, packaging materials, and various other drug packaging utensils. Pulanco and Jiminez were handcuffed immediately. A further search of the apartment revealed additional drugs and drug paraphernalia. It was later discovered that Pulanco had a key to the locked six foot fence protecting the rear of the property.

Pulanco was subsequently charged with possession of a controlled substance,[2] possession with intent to deliver a controlled substance,[3] possession of drug paraphernalia,[4] receiving stolen property,[5] and conspiracy to commit those crimes.[6] Attorney Kurt Geishauser was appointed to represent him. He filed an omnibus pretrial motion, including a suppression motion, which was denied following a March 18, 2004 hearing before the Honorable Linda Ludgate. On July 30, 2004, Judge Ludgate convicted Pulanco of the drug charges and

their conspiracy counterparts. He was subsequently sentenced to ten to twenty years' imprisonment on August 16, 2004. Still represented by Attorney Geishauser, Pulanco filed a direct appeal on September 10, 2004. In response to an order to file a Pa.R.A.P.1925(b) statement of matters complained of on appeal, Pulanco indicated that he would be asserting on appeal that "[t]he evidence presented at trial was insufficient to prove the defendant's guilt beyond a reasonable doubt as to all counts," and that "[t]he Court erred in denying the defendant's Pretrial Motion to suppress evidence." On October 12, 2004, Judge Ludgate filed a Rule 1925(a) Opinion.

*Commonwealth v. Pulanco*, 897 A.2d 521 (Pa.Super.2006) (unpublished memorandum) (citations omitted and footnotes original).

¶ 3 Upon review, the panel concluded that four of Appellant's six issues on appeal were waived either for failure to include them in his Pa.R.A.P.1925(b) statement or for vagueness. However, the panel did address Appellant's third issue wherein he asked: "[w]hether a warrant issued for the second floor rear apartment authorized the search of an adjacent apartment accessible only through a closet?" *Pulanco*, 897 A.2d 521 (unpublished memorandum at 5). The Memorandum in that earlier decision reflects that this Court agreed with the trial court's conclusion that the search was legal and suppression was not warranted. *Id.* (unpublished memorandum at 7–10). Additionally, the panel addressed Appellant's sixth issue which challenged the sufficiency of the evidence. The panel concluded there was

---

**2.** 35 P.S. § 780–113(a)(16).

**3.** 35 P.S. § 780–113(a)(30).

**4.** 35 P.S. § 780–113(a)(32).

**5.** 18 Pa.C.S.A. § 3925(a).

**6.** 18 Pa.C.S.A. § 903(a)(1), (2).

sufficient evidence to support the verdict, and the panel ultimately affirmed the judgment of sentence. *Id.* (unpublished memorandum at 10–12).

¶ 4 On September 21, 2006, Appellant filed a petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541–9546. Counsel was appointed, and Appellant, with the assistance of appointed counsel, filed an amended petition on April 27, 2007. In the petition, Appellant alleged, *inter alia,* that appellate counsel was ineffective.

¶ 5 The trial court scheduled a hearing on the PCRA petition for July 24, 2007. The docket does not reflect that a hearing was held on that date and there is no transcript of such a hearing in the certified record. However, on that date and by agreement of counsel, the trial court entered an order permitting Appellant to file an amended 1925(b) statement *nunc pro tunc,* which in effect, reinstated Appellant's direct appeal rights. Order, 7/24/07. The order also stated that Appellant's PCRA petition was moot. *Id.* Appellant timely complied, and thereafter, the trial court filed a Pa.R.A.P.1925(a) opinion on August, 9, 2007, addressing the issues Appellant purported to raise on his second direct appeal. Appellant subsequently filed the instant appeal to this Court.

■ ¶ 6 After careful review, we conclude that we are constrained to vacate the order allowing Appellant to file an amended Pa.R.A.P.1925(b) statement *nunc pro tunc,* which in effect, reinstated his direct appeal rights. It is well settled that when direct appeal counsel files a Pa.R.A.P. 1925(b) statement that fails to preserve **any** issues for appellate review, the PCRA court may reinstate the petitioner's direct appeal rights *nunc pro tunc. Commonwealth v. Johnson,* 889 A.2d 620, 623 (Pa.Super.2005) (citing *Commonwealth v. Hernandez,* 755 A.2d 1, 8–9 n. 4 (Pa.Su-

per.2000) (finding that a PCRA petitioner is entitled to a direct appeal *nunc pro tunc* where prior counsel caused his sole direct appellate claim to be waived), *affirmed in part,* 572 Pa. 477, 817 A.2d 479 (2003)). However, in the case *sub judice,* Appellant has had appellate review of some, albeit not all, of his issues. There is no right to the reinstatement of appellate rights nunc pro tunc in this instance. *Commonwealth v. Halley,* 582 Pa. 164, 173, 870 A.2d 795, 801 (2005) (citing *Hernandez,* 755 A.2d at 9 n. 4 ("[A] PCRA petitioner is entitled to an appeal nunc pro tunc where prior counsel's actions, in effect, entirely denied his right to a direct appeal, **as opposed to a PCRA petitioner whose prior counsel's ineffectiveness may have waived one or more, but not all, issues on direct appeal.**") (emphasis added)).

■ ¶ 7 Accordingly, because Appellant did have a direct appeal addressing some of his issues, he was not entitled to the reinstatement of his direct appeal rights *nunc pro tunc.* Appellant's PCRA petition could not be considered as a petition for a *nunc pro tunc* appeal, and he was required to avail himself of the PCRA process. *Hernandez,* 755 A.2d at 9 n. 4. Thus, the trial court was required to conduct a PCRA analysis as to the merits of the issues raised in his petition. Where some but not all of the petitioner's issues have been addressed, "the PCRA petitioner's right to a direct appeal was not entirely denied by counsel's ineffectiveness, and, therefore, he must establish that counsel's ineffectiveness so undermined the truth-determining process so as to render unreliable the adjudication of guilt or innocence." *Id.*

¶ 8 Therefore, Appellant's judgment of sentence, which was previously affirmed by this Court, remains undisturbed. However, we are constrained to vacate the order allowing Appellant to file an amend-

ed Pa.R.A.P.1925(b) statement *nunc pro tunc*, which in effect reinstated his direct appeal rights. We remand this matter to the trial court to conduct its analysis of Appellant's petition pursuant to the strictures of the PCRA.

¶ 9 Order vacated. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.