# Commonwealth v. Pulanco

C.P. of Berks County, no. CP-06-5771-03.

*Kelly Kline, assistant district attorney,* for Commonwealth.
*Michael Dautrich,* for defendant.

LUDGATE, *J.,* December 3, 2008—

PROCEDURAL AND FACTUAL HISTORY

On November 12, 2003, Henry Pulanco, the defendant, was charged in a Bill of Information with: one count of possession of a controlled substance, 35 P.S. §780-113(a)(16); one count of possession with intent to deliver a controlled

substance, 35 P.S. §780-113(a)(30); one count of possession of drug paraphernalia, 35 P.S. §780-113(a)(32); one count of receiving stolen property, 18 Pa.C.S. §3925(a); one count of conspiracy to commit possession of a controlled substance, 18 Pa.C.S. §903(a)(1)(2); one count of conspiracy to commit possession with intent to deliver a controlled substance, 18 Pa.C.S. §903(a)(1)(2); one count of conspiracy to commit possession of drug paraphernalia, 18 Pa.C.S. §903(a)(1)(2); and, one count of conspiracy to commit receiving stolen property, 18 Pa.C.S. §903(a)(1)(2).

Attorney Kurt B. Geishauser represented the defendant at a bench trial held on July 30, 2004, wherein the defendant was found guilty of Count 1, possession with intent to deliver a controlled substance, 35 P.S. §780-113(a)(30); Count 2, possession of a controlled substance, 35 P.S. §780-113(a)(16); Count 3, possession of drug paraphernalia, 35 P.S. §780-113(a)(32); Count 5, conspiracy to commit possession with intent to deliver a controlled substance, 18 Pa.C.S. §903(a)(1)(2); Count 6, conspiracy to commit possession of a controlled substance, 18 Pa.C.S. §903(a)(1)(2); and Count 7, conspiracy to commit possession of drug paraphernalia, 18 Pa.C.S. §903(a)(1)(2).

The defendant was sentenced on these charges on August 16, 2004 to a period of 10 to 20 years incarceration by the Bureau of Corrections in a state correctional facility. The defendant, through appellate counsel Attorney Geishauser, filed his notice of appeal on September 10, 2004. On September 14, 2004 this court ordered that counsel file a concise statement of matters com-

plained of on appeal pursuant to Pa.R.A.P. 1925(b). The defendant, through his counsel, filed a concise statement on September 27, 2004, raising insufficiency of the evidence and generally claiming error in the denial of the defendant's pretrial suppression motion.

On October 12, 2004, this court issued a memorandum opinion in response to the defendant's concise statement of matters complained of on appeal, filed by Attorney Geishauser. On November 17, 2004, Mr. Geishauser was replaced as defendant's counsel by Michael Cammarano, Esquire. On September 16, 2004, Attorney Cammarano filed a brief in support of the 1925(b) statement on behalf of the defendant, raising more specific suppression claims. However, in its opinion dated February 3, 2006, the Pennsylvania Superior Court deemed the additional and more specific issues raised by Mr. Cammarano to be waived and upheld this court's judgment of sentence.

On September 21, 2006, the defendant filed his first pro se "motion for post-conviction collateral relief," pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §9541 et seq. On September 26, 2006, the court appointed Gail Chiodo, Esquire to represent the defendant in all proceedings regarding the disposition of his PCRA petition. On November 2, 2006, the court ordered that the appointment and appearance of Attorney Chiodo, as counsel for the defendant, was vacated and withdrawn due to a conflict of interest. On that same date, the court appointed Michael Dautrich, Esquire to represent the defendant in the disposition of his PCRA petition.

On May 4, 2007, Michael Dautrich, Esquire filed an "amended motion under the Post-Conviction Relief Act."

The court scheduled a PCRA hearing to be held on June 26, 2007 via video conferencing. The hearing was rescheduled to take place on July 24, 2007. On that date, by agreement of counsel, the court entered an order allowing the defendant to file an amended 1925(b) statement within seven days from the date of the hearing. On July 31, 2007, the defendant filed his timely "nunc pro tunc concise statement of errors complained of on appeal pursuant to order of court on July 24, 2007."

On July 23, 2008, the Superior Court issued a published opinion vacating the order of July 24, 2007, which permitted the defendant to file an amended 1925(b) statement nunc pro tunc and remanding the case to this court with instructions to conduct a PCRA analysis as to the merits of the defendant's PCRA petition. *Commonwealth v. Pulanco,* 954 A.2d 639 (Pa. Super. 2008).

On October 7, 2008, a PCRA hearing was held for purposes of complying with the Superior Court's remand. Attorney Geishauser testified that he was informed at the bench trial, or shortly thereafter, that the defendant intended to hire Attorney Cammarano to handle any appeal. (Notes of testimony PCRA hearing, 10/7/2008 p. 6.) Mr. Geishauser filed a notice of appeal with the Superior Court which was timely filed. (N.T. PCRA hearing 10/7/2008 p. 10.) Mr. Geishauser further testified that he filed a 1925(b) statement raising insufficiency of evidence at trial and error in the denial of the defendant's pretrial suppression motion. (N.T. PCRA hearing 10/7/2008 p. 7.) The 1925(b) statement was filed within the time frame set by this court. (N.T. PCRA hearing 10/7/2008 p. 10.) Mr. Geishauser also testified that he

did not request an extension of time in which to file a 1925(b) statement from this court. *Id.* Mr. Geishauser stated he was familiar with the Superior Court's case law on waiver of appellate issues for lack of specificity at the time he filed the statement. (N.T. PCRA hearing 10/7/2008 pp. 9-10.) Mr. Cammarano was retained to represent the defendant on or about November 14, 2004. (N.T. PCRA hearing 10/7/2008 p. 19.) Mr. Cammarano testified that the issues contained in the brief he filed on behalf of the defendant were more specific than the issues raised in the 1925(b) statement filed by Mr. Geishauser. (N.T. PCRA hearing 10/7/2008 p. 15.) Mr. Cammarano did not seek permission from this court nor the Superior Court to file an amended 1925(b) statement. *Id.* Mr. Cammarano was aware that this court had already issued an opinion regarding the 1925(b) issues raised by Mr. Geishauser at the time Mr. Cammarano filed his brief. (N.T. PCRA hearing 10/7/2008 p. 19.)

## DISCUSSION

### *Ineffective Assistance of Counsel*

In cases where counsel fails to file a 1925(b) statement when ordered to do so by the court, counsel is per se ineffective. See *Commonwealth v. Scott,* 952 A.2d 1190, 1192 (Pa. Super. 2008). Nunc pro tunc appeal is proper when counsel's actions *entirely* denied a defendant his right of direct appeal. *Commonwealth v. Hernandez,* 755 A.2d 1, 9 n.4 (Pa. Super. 2000). However, in instances where counsel's acts or omissions caused waiver of one or more, but not all, issues on direct appeal, the defendant must establish that counsel's ineffectiveness so under-

mined the truth-determining process so as to render unreliable the adjudication of guilt or innocence. *Id.*

The standard by which a defendant may prove ineffective assistance of counsel is well established. First, counsel is presumed to be effective. *Commonwealth v. Rios,* 591 Pa. 583, 920 A.2d 790 (2007). In order to overcome the presumption of effectiveness and obtain relief on a claim of ineffective assistance of appellate counsel, a defendant must plead and prove (1) the underlying claim was of arguable merit; (2) that counsel had no reasonable basis for the action or inaction; and (3) the defendant was prejudiced by counsel's acts or omissions. *Commonwealth v. Pierce,* 537 Pa. 514, 645 A.2d 189 (1994). Failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067 (2006). Prejudice is established when a defendant has sufficiently shown that "but for the errors and omissions of counsel, there *is* a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Kimball,* 555 Pa. 299, 312, 724 A.2d 326, 333 (1996). (emphasis added) Counsel cannot be deemed ineffective for failure to raise a meritless claim. *Commonwealth v. Nolan,* 579 Pa. 300, 855 A.2d 834 (2004).

The three-prong *Pierce* test for ineffective assistance governs this case. The per se standard is inapplicable to the instant analysis because Mr. Geishauser did file a 1925(b) statement of errors complained of on appeal; the defendant did obtain direct review of some of his issues. Mr. Geishauser's actions do not meet the *Pierce* test.

Although the more specific claims of error which Mr. Geishauser failed to raise on appeal were of arguable merit and lacked reasonable basis, Mr. Geishauser's acts or omissions do not meet the remaining prong of ineffective assistance. There is no reasonable probability that the outcome of the appeal would have been different had Mr. Geishauser or Mr. Cammarano raised the more specific issues which Mr. Cammarano addressed in his brief because such issues lack merit.

Mr. Cammarano attempted to elaborate on Mr. Geishauser's 1925(b) statement in his brief in support. In the brief, Mr. Cammarano raised the following issues:

"(I) Whether the affidavit filed in support of the search warrant application states sufficient probable cause?

"(II) Whether a warrant issued for 109 South 5th Street, Reading, PA authorized the search of 111 South 5th Street, Reading PA?

"(III) Whether a warrant issued for the second floor rear apartment authorized the search of an adjacent apartment accessible only through a closet?

"(IV) Whether the search of an adjacent apartment was authorized as a protective sweep?

"(V) Whether a protective sweep authorized the search of objects incapable of concealing a person?"[1] (See defendant's PCRA hearing exhibit no. 3 p. 5.)

---

1. The brief in support also raised a sufficiency of evidence claim. Because the Superior Court addressed this issue on direct appeal, it will not be considered for PCRA purposes.

The first claim challenges the probable cause upon which the search warrant was issued. Pennsylvania courts employ a "totality of the circumstances" test, as enunciated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317 (1983), for determining the existence of probable cause of the issuance of a search warrant. See *Commonwealth v. Singleton,* 412 Pa. Super. 550, 551, 603 A.2d 1072 (1992) citing *Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1985). The United States Supreme Court has held that the magistrate's determination that probable cause existed must be given deference. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317 (1983). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Singleton,* 412 Pa. Super. 550, 552, 603 A.2d 1072, 1073 (1992) citing *Commonwealth v. Miller,* 334 Pa. Super. 374, 382, 483 A.2d 498, 501-502, (1984).

In the present case, the warrant's underlying affidavit of probable cause contains averments that allege, inter alia, that the affiant, Trooper Teresa Cloman, is a trooper with the Pennsylvania State Police presently assigned to the Reading Vice Unit. The affidavit avers that the affiant has received special training in the area of drug law enforcement/investigation from the Pennsylvania Office of the Attorney General, the Pennsylvania State Police Academy, United States Department of Justice Drug Enforcement Agency, and the Pennsylvania Na-

tional Guard Northeast Counterdrug Training Center. Additionally, the affidavit avers that the affiant has received numerous trainings and certifications, specifically in the area of illegal trafficking of controlled substances. (See Commonwealth's bench trial exhibit no. 1, p. 2.)

The affidavit of probable cause goes on to state that "[t]hrough a combination of training, education and experience, your affiant has become familiar with the manner and methods of operations of persons involved in the distribution and use of controlled substances and based on that training, education and experience, your affiant knows that: (1) drug traffickers commonly have in their possession, and/or conceal on their persons, controlled substances, drug-related paraphernalia, weapons, and/or other equipment or items utilized in the distribution of controlled substances; (2) that drug traffickers maintain books, records, receipts, notes, ledgers and other papers pertaining to the transportation, sale, and distribution of controlled substances and that the aforementioned items are maintained where traffickers have ready access to them; (3) that drug traffickers commonly maintain address and telephone records which reflect the names, addresses, and/or telephone numbers of their associates in the trafficking organization; (4) that persons involved in drug trafficking maintain, on hand, large amounts of cash in order to finance and facilitate their ongoing drug business; (5) that drug traffickers take or cause to be taken photographs of themselves, their associates, their property and their product and usually maintain those photographs in their possession; (6) that drug traffickers are frequently present for the purpose of

purchasing or using controlled substances. I know that these individuals, if present, will commonly make attempts to conceal on their person, or to destroy any evidence." (See Commonwealth's bench trial exhibit no. 1, p. 2.)

Next, the affidavit of probable cause describes occurrences that happened while the affiant was working in an undercover capacity. The affidavit avers that on September 3, 2003 and on September 16, 2003, the affiant purchased heroin from a female named "India" and an unknown Hispanic male in the area between 107 and 109 South 5th Street in Reading City, Berks County, Pennsylvania. On both occasions, the affidavit states that the affiant saw two additional unidentified Hispanic males. Both times, the affiant transported the evidence back to the Reading State Police barracks and field tested the substance. A positive reaction for the presence of heroin was indicated both times. (See Commonwealth's bench trial exhibit no. 1, p. 3.)

Finally, the affidavit of probable cause states, inter alia, that the affiant contacted the Reading City Vice Unit and was informed by Criminal Investigator Pat Leporace of ongoing drug activity in this location. The affidavit goes on to state that during this investigation, the affiant and other members of the Pennsylvania State Police Vice Unit had observed numerous drive-up and on-foot "buyers" at the rear lot of 107 and 109 South 5th Street. The affiant states in the affidavit that she believes that apartment number 5, at 109 South 5th Street is the main source of the supply of the heroin, which is being distributed through the lower level drug dealers in the area, and that the unknown Hispanic males control the distribution of

the heroin and utilize the apartment as a means of concealing the "stash" of heroin. (See Commonwealth's bench trial exhibit no. 1, p. 4.)

In considering the "totality of the circumstances" of this case and viewing the affidavit from a commonsense, non-technical perspective, the court finds that the affidavit contains sufficient facts to determine that there was probable cause that there were drugs at the premises. See *Commonwealth v. Baker,* 532 Pa. 121, 126, 615 A.2d 23, 25 (1992) (sufficient information existed for magistrate to make a neutral and detached decision whether there was a fair probability that contraband or evidence of a crime existed in a particular place based on hearsay information corroborated by officer's drug purchase). Therefore, the claim is meritless and failure to preserve or raise the issue did not result in prejudice to the defendant.

The second issue raised by the defendant is whether a warrant issued for 109 South 5th Street, Reading, PA, authorized the search of 111 South 5th Street, Reading, PA. Article I, Section 8 of the Pennsylvania Constitution, like its federal counterpart, secures the right to be free from unreasonable searches and states, "no warrant to search any place or seize any person or thing shall issue without describing them as nearly as may be. . . ." Pennsylvania Constitution Article I, Section 8; *Commonwealth v. Grossman,* 521 Pa. 290, 555 A.2d 896 (1998). Further:

"A search warrant directed against an apartment house, or other multiple-occupancy structure will be held invalid for lack of specificity if it fails to describe the

particular room or subunit to be searched with sufficient definiteness to preclude a search of other units. *Commonwealth v. Carlisle,* 517 Pa. 36, 40, 534 A.2d 469, 471 (1987). (citations omitted) Where the description is precise enough to enable the officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity. *In re Search Warrant B-21778,* 341 Pa. Super. 350, 359, 491 A.2d 851, 856 (1985)." *In the Interest of Wilks,* 418 Pa. Super. 73, 78, 613 A.2d 577, 579 (1992).

In the present case, the application for the search warrant clearly denoted a specific apartment to be searched. Namely, the description of the premises states:

"The dwelling located at 109 South 5th Street, Reading City, Berks County, Pennsylvania is described as a three-story row apartment building. Specifically, the rear second floor apartment display[ing] the number '5' on the exterior white door. Two Hispanic males and any other persons in the aforementioned apartment to prevent the destruction and removal of evidence." (See Commonwealth's bench trial exhibit no. 1, p. 1.)

However, the warrant was for 109 South 5th Street while the apartment's actual address was 111 South 5th Street. The Superior Court has held that Pennsylvania Rule of Criminal Procedure 206 is not so technical as to require a search to be found unconstitutional if there is a mistake regarding the address of the building to be searched; a mistake as to the actual number of the apartment to be searched will not render the search unconstitutional so long as there is sufficient evidence that the

police knew which residence it was that they intended to search and there was no question that probable cause for the search existed. *Commonwealth v. Washington,* 858 A.2d 1255, 1257 (Pa. Super. 2004) citing *Commonwealth v. Belenky,* 777 A.2d 483 (Pa. Super. 2001).

In *Belenky,* a confidential informant had advised the police that the defendant was selling drugs from an apartment located at 4252 Salem Street in Philadelphia, Pennsylvania. *Commonwealth v. Belenky,* 777 A.2d 483, 485 (Pa. Super. 2001). After the police went to what they believed was this address and did a controlled buy, they sought and obtained a search warrant for the premises. While in the process of executing the search warrant three days later, it became apparent that the actual address of the building was 4251 Frankford Avenue. The court, finding that there was no ambiguity about the location where the criminal activity occurred and no question that probable cause for the search existed at the location that was searched, held the search to be constitutional. *Id.* at 487.

In the instant case, prior to execution of the search warrant, the police had made several controlled buys from the residence that was searched. Each buy had occurred from the back of the building, which was located next to 107 South 5th Street. The officer who applied for the warrant was unfamiliar with the area and assumed that the building next to 107 South 5th Street would be 109, when in fact, it was 111 South 5th Street. (Omnibus pretrial hearing N.T. 3/18/04, p. 118.) It is clear from the testimony presented at the pretrial hearing that 111 South 5th Street was indeed the residence that the police intended to search. Therefore, the mistake as to number of

the apartment did not render the search unconstitutional. Failure of counsel to raise or preserve this issue did not result in prejudice to the defendant and was not ineffective assistance of counsel.

The third issue raised by the defendant is whether a warrant issued for the second floor rear apartment authorized the search of an adjacent apartment accessible only though a closet. In essence, the defendant is claiming that the officers executing the search warrant exceeded the scope of the search warrant by searching what the defendant claims was an entirely separate, adjoining apartment. The Fourth Amendment standard under which the warrant is reviewed is whether the officers' error in executing the warrant was reasonable under the circumstances. *Commonwealth v. Kiessling,* 380 Pa. Super. 442, 444, 552 A.2d 270, 271 (1988). In *Maryland v. Garrison,* 107 S.Ct. 1013 (U.S. 1987), the United States Supreme Court established the standard for determining whether a search warrant was properly executed in circumstances similar to the case at bar. *Commonwealth v. Wilson,* 395 Pa. Super. 523, 525, 577 A.2d 913, 914 (1990).

In *Garrison,* officers obtained a search warrant for the "third floor apartment" at 2036 Park Avenue. Unbeknownst to the officers, the third floor of this building was divided into two separate apartments. However, it was only after discovering the contraband that the officers realized that they were not in the correct apartment. The *Garrison* court was called upon to determine if the seizure of contraband from Garrison's apartment violated the defendant's Fourth Amendment rights. The United States Supreme Court held that the execution of the search warrant was proper, stating that "the officers'

conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment." *Commonwealth v. Kiessling,* 380 Pa. Super. 442, 447, 552 A.2d 270, 273 (1988) citing *Garrison,* 480 U.S. 79, 86 (1987). The court based its conclusion on the fact that the objective facts available to the officers at the time of the search suggested no distinction between the two apartments. *Id.*

Here, the validity of the search of the adjacent apartment depends upon whether the officers knew or should have known that they exceeded the scope of the search warrant by searching an area of the structure beyond apartment number five. The court finds that the officers who executed the search warrant in this matter certainly possessed "objectively understandable and reasonable reasons" to believe that apartment number five extended beyond the closet through which Trooper Gauntlett proceeded for the following reasons: (1) Trooper Gauntlett quite understandably believed that the apartment continued into the adjoining room on the other side of the closet, as the room the officers initially entered was very small, sparsely furnished, and generally not appearing to be fit to exist as a completely separate residence, as there was not even a kitchen within that space; (2) an orange power cord, which ran from a power strip in the first room, through the closet, and into a wall outlet in the adjoining room, prevented the back closet door from being closed; (3) both C.I. Leporace and Trooper Gauntlett testified that the front door to the closet was open and that both the front and back closet doors were unlatched; (4) upon proceeding through the closet,

Trooper Gauntlett almost immediately observed Mr. Pulanco, who fit the description of the men the officers were looking for and who ignored his request to stop and raise his hands. (N.T. bench trial 7/30/04, p. 119.)

Accordingly, the circumstances here justified the officer's belief that apartment number five continued beyond the closet in the room that they had initially entered and that those rooms beyond the closet area were not a separate and distinct residence. Thus, according to the officers' justifiable and reasonable belief that they were still in apartment number five, they had every right to search the nightstand, the trap door, and any other area in the adjoining room where the incriminating evidence was found. Just like in *Garrison,* the objective facts available to the officers at the time of execution of the search warrant offered no distinction between apartment number five and the adjoining room. The officers executing the search warrant did not exceed the scope of the search warrant, and post-conviction relief cannot be granted on this issue as it is meritless.

The fourth and fifth issue raised by the defendant is whether the search of an adjacent apartment was authorized as a protective sweep and whether a protective sweep authorized the search of objects incapable of concealing a person. Under emergent circumstances, protective sweeps are a well-recognized exception to the warrant requirement. A protective sweep is "a quick and limited search of [the] premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie,* 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990). There are two levels of protec-

tive sweeps: (1) officers can, without probable cause or reasonable suspicion, look in closets and other spaces close to the place of arrest from which an attack could be launched and (2) officers can search for attackers further away from the place of arrest if they can sufficiently articulate specific facts that justify a reasonable fear for the safety of officers on the premises. See *Commonwealth v. Taylor,* 565 Pa. 140, 150, 771 A.2d 1261, 1267 (2001). Under the State Constitution, protective sweeps for persons are permissible; however, they must be swift and target only those areas where a person could reasonably be expected to hide; protective sweeps cannot be used as pretext for evidentiary search. Pennsylvania Constitution Article I, Section 8.

The defendant's reliance on the protective sweep exception to the warrant requirement is misplaced. Here, the officers did not enter the adjacent apartment with the intent to effectuate a protective sweep. Instead, the officers entered the adjacent apartment in reliance on a valid search warrant for apartment number five. The officers walked through a closet into the adjacent apartment under a reasonable but mistaken belief that the adjacent room was an extension of apartment number five. The officers who executed the search warrant did not search the adjacent room pursuant to the protective sweep exception to the warrant requirement. Issues four and five are meritless and counsel cannot be found ineffective for failure to raise such issues on appeal or preserve the same for appeal.

The defendant's nunc pro tunc 1925(b) statement raised a new issue, that being whether the defendant's

statement must be suppressed as the fruit of an illegal search. Because reinstatement of appellate rights nunc pro tunc has been reversed, the court will treat this issue as not properly preserved for consideration. However, in the interest of judicial economy, the court will address the merits of the claim, which are lacking. The fruit-of-the-poisonous-tree doctrine "requires the exclusion of tangible evidence seized during an unlawful search, and derivative evidence, both tangible and testimonial, acquired as a result of the unlawful search." *Commonwealth v. Cleland,* 66 D.&C.4th 225, 237 n.10 (2004), citing *United States v. Herrold,* 962 F.2d 1131, 1137 (3d Cir. 1992), *cert. denied,* 506 U.S. 958, 113 S.Ct. 421 (1992). In the present case, the underlying search was lawful. The warrant was based on probable cause and, for the reasons discussed above, the execution of the search warrant was proper. Therefore, the fruit-of-the-poisonous-tree doctrine does not apply and the defendant is not entitled to have his statements suppressed. Even if the issue had been properly preserved and waived for review, the defendant would have received no relief on the basis of the issue and thus has suffered no prejudice.

Having concluded that actions or inactions of Attorneys Geishauser and Cammarano only caused waiver of claims which are meritless, the defendant has failed to meet the burden of showing reasonable probability that relief would have been obtained on appeal. The defendant's "amended motion under the Post Conviction Relief Act" is therefore denied.