J-S54006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CAINE SHEPPARD PELZER | : | |
| | : | |
| Appellant | : | No. 1279 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 15, 2002
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0001989-2001

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:　　　　　　　　　**FILED MAY 26, 2021**

Appellant, acting *pro se*, appeals *nunc pro tunc* from the judgment of sentence imposed following his convictions for robbery and related offenses. Appellant challenges the trial court's rejection of his **Batson**[1] claim, alleges violations of his speedy trial rights, and argues that his mandatory-minimum sentences for robbery are illegal.  We affirm Appellant's convictions, vacate Appellant's judgment of sentence, and remand the matter for resentencing.

The underlying facts of this matter are well known to the parties.  Briefly, Appellant was sentenced to an aggregate term of twenty-two to forty-four years' incarceration after he was convicted for robbery and related offenses in

_____

[1] **Batson v. Kentucky**, 476 U.S. 79 (1986).

2002.[2] Appellant filed a timely direct appeal in which his sole claim pertained to trial counsel's ineffectiveness.[3]  While Appellant's direct appeal was pending, our Supreme Court decided **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), which held that ineffectiveness claims must be raised in a petition for relief under the Post-Conviction Relief Act[4] (PCRA).  As a result, this Court dismissed Appellant's appeal without prejudice and affirmed his judgment of sentence.  **See Commonwealth v. Pelzer**, 987 MDA 2002 (Pa. Super. filed May 7, 2003) (unpublished mem.).

Appellant's sentence became final on June 6, 2003.  Although Appellant was represented by appellate counsel, Appellant did not file a timely PCRA petition within the one-year deadline.  Appellant subsequently filed multiple untimely PCRA petitions, all of which were dismissed based on the PCRA  time bar.

In 2015, Appellant filed a petition for writ of *habeas corpus* with the United States Court for the Eastern District of Pennsylvania.  **See Pelzer v.**

---

[2] The trial court applied a mandatory minimum sentence based on Appellant's visible possession of a firearm during the robbery.  **See** 42 Pa.C.S. § 9712(a).  Section 9712(a) was later held unconstitutional by this Court in **Commonwealth v. Valentine**, 101 A.3d 801, 812 (Pa. Super. 2014) (citing **Alleyne v. United States**, 570 U.S. 99 (2013) (holding that any fact that increases the mandatory minimum sentence is an element that must be submitted to the jury and found beyond a reasonable doubt)).

[3] We note that although Appellant included additional claims in his Pa.R.A.P. 1925(b) statement, appellate counsel abandoned those issues on appeal to this Court.

[4] 42 Pa.C.S. §§ 9541-9546.

***Mahally***, 388 F. Supp. 3d 366, 371-72 (M.D. Pa. 2019). Therein, Appellant sought reinstatement of his appellate rights, alleging that he had been abandoned by appellate counsel. Appellant also raised additional issues relating to trial counsel's ineffectiveness, violations of his speedy trial rights, and other substantive claims. ***See id.***

On January 18, 2019, the district court granted Appellant a conditional writ of *habeas corpus*, which ordered Appellant's release from custody unless the state court reinstated his direct appeal and post-conviction rights *nunc pro tunc* within 180 days. ***See id.*** at 369. The district court explained that Appellant's direct appeal and post-conviction rights "may have been forfeited, in large measure, due to counsel's inaction" and that "granting this limited relief ensures that the merits of any claims raised by [Appellant] are fully developed and considered by the state courts." ***Id.*** at 381.

On December 26, 2019,[5] the trial court issued an order reinstating Appellant's direct appeal and post-conviction rights *nunc pro tunc.* Appellant subsequently filed a timely *pro se* notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.

In its Rule 1925(a) opinion, the trial court rejected several of Appellant's issues based on its conclusion that the district court's recommendation

---

[5] The trial court initially reinstated Appellant's appeal rights *nunc pro tunc* on July 3, 2019. However, after new counsel abandoned Appellant on appeal, the matter was remanded to the trial court for a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81, 82 (Pa. 1998), and Appellant ultimately decided to proceed *pro se*. ***See*** Trial Ct. Op., 7/17/20, at 26-27.

pertained solely to Appellant's PCRA claims and, therefore, Appellant's direct appeal claims were not properly before the court for review. *See* Trial Ct. Op. at 8-9. In any event, the trial court addressed each of Appellant's issues and concluded that they were meritless.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Whether the Commonwealth and trial court violated Appellant's [rights under the] Fourteenth Amendment Equal Protection Clause under the United States and Pennsylvania Constitutions by allowing the prosecutor to use peremptory challenges to exclude blacks from the jury in a case the prosecution called a "interracial crime" and whether the trial court committed reversible error when it failed to undertake a sensitive inquiry into such direct and circumstantial evidence which would have made the prosecution come forward with a neutral explanation for challenging the jurors which relates to the particular case to be tried?

2. Whether the Commonwealth of Pennsylvania violated United States and Pennsylvania Constitutions when it denied the Appellant a speedy trial pursuant to the Sixth and Fourteenth Amendment and whether the Commonwealth violated articles of the Extradition Act, Interstate Agreement on Detainers Act (IAD) (42 Pa.C.S. §§ 9101–08), Uniform Criminal Extradition Act (42 Pa.C.S. § 9121, *et seq.*), [and] Pa.R.Crim.P. 600 [by] failing to bring Appellant to trial within 180 days of his written request for extradition from New York City to Luzerne County, Pennsylvania, then moving Appellant to multiple county prisons in Pennsylvania in an attempt to make Appellant unavailable for trial and hindering [A]ppellant's access to witnesses, warranting dismissal for lack of subject matter jurisdiction and lack of jurisdiction and whether all counts in the indictment should have been dismissed for violation of Pa.R.Crim.P. 600 as count 24 of the indictment was?

3. Whether Pennsylvania's mandatory minimum sentence under 42 Pa.C.S. § 9712 for offenses committed with firearms is unconstitutional which was illegally applied to the Appellant's

- 4 -

case under the Pennsylvania and United States Constitutions since he was acquitted of all firearms charges but erroneously sentenced under the act and its application being in conflict with the plain language of 204 Pa.Code § 303.10 which violated the Appellant's Fifth, Sixth, Eighth, Fourteenth Amendments due process and double jeopardy clause of the [Pennsylvania] and U.S. Constitutions constituting an abuse of discretion in its severity?

4. Whether Pennsylvania's mandatory minimum sentence under 42 Pa.C.S. § 9712 is illegal, unconstitutionally invalid, void and of no force and effect as applied to the Appellant where he was charged, tried and acquitted of numerous firearms violations, but subsequently sentenced to a determinate sentence of 44 years of total incarceration where he is actually innocent of his sentence enhancement in light of *Alleyne v. U.S.*, 33 S.Ct. 2151 (2013); *Commonwealth v. Hopkins*, 117 A.3d 247 (2015); *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), thereby violating Appellant's [rights under the] Sixth, Eighth and Fourteenth Amendments to the Pennsylvania and United States Constitutions going beyond he states power to impose such illegal penalty?

5. Whether [the] trial court is enforcing an illegal penalty upon Appellant which automatically sentenced him to 44 years pursuant to the plain language of [] 42 Pa.C.S. § 9712(a), which denies eligibility for probation, parole, work release or furlough once sentenced under the act in violation of the Sixth and Eighth Amendments to the United States and Pennsylvania Constitutions for substantive violations which he is actually innocent of that automatically altered the range of conduct and punishment which turns an indeterminate sentence into a determinate one for a class of people in light of *Alleyne*, *Hopkins*, and *Montgomery*?

Appellant's Brief at 4-5 (some formatting altered).

**Scope of Appeal**

Initially, we must address the trial court's contention that Appellant's direct appeal claims are not properly before this Court. In its Rule 1925(a) opinion, the trial court reasoned that Appellant was not entitled to review of

- 5 -

his direct appeal claims because this Court affirmed his judgment of sentence after he filed a direct appeal in 2002. ***See*** Trial Ct. Op. at 8-9. However, the record reflects that although Appellant filed a direct appeal in 2002, appellate counsel did not raise any of Appellant's preserved direct appeal claims. ***See Commonwealth v. Pelzer***, 987 MDA 2002 (Pa. Super. 2003) (unpublished mem.). Instead, appellate counsel raised a single claim challenging trial counsel's effectiveness, which resulted in this Court's dismissal of the appeal. ***See id.***

Further, although Appellant subsequently sought relief under the PCRA, this Court ultimately rejected those efforts based on the untimeliness of Appellant's petitions. ***See Commonwealth v. Pelzer***, 940 MDA 2009 (Pa. Super. 2011) (unpublished mem.) (vacating the PCRA court's order and remanding for a hearing based on the newly discovered evidence exception to the PCRA time bar); ***Commonwealth v. Pelzer***, 1445 MDA 2013 (Pa. Super. 2014) (unpublished mem.) (affirming the dismissal of Appellant's PCRA petition as untimely); ***Commonwealth v. Pelzer***, 1927 MDA 2016 (Pa. Super. 2017) (unpublished mem.) (same). Therefore, contrary to the trial court's assertion, Appellant's substantive claims have not been reviewed by this Court.

Moreover, the district court recommended reinstatement of Appellant's direct appeal and post-conviction rights after concluding that Appellant's "rights may have been forfeited, in large measure, due to counsel's inaction." ***See Pelzer***, 388 F. Supp. 3d at 371-72. In accordance with that order, the

trial court reinstated Appellant's direct appeal and post-conviction rights *nunc pro tunc.* Under these circumstances, Appellant is entitled to review of his direct appeal claims. *See Commonwealth v. Pulanco*, 954 A.2d 639, 642 (Pa. Super. 2008) (stating that where appellate counsel waives all appellate issues and thereby completely denies the appellant the right to a direct appeal, the appropriate relief is, in general, the reinstatement of direct appeal rights). Therefore, we will consider all of Appellant's issues on appeal.

### *Batson* Claim

In his first claim, Appellant argues that the trial court erred in denying his *Batson* challenge and allowing the Commonwealth to strike the only African American person from the jury. Appellant's Brief at 17. Appellant contends that the Commonwealth's "remarks of race, the racial tone, demeanor and reason why he sought to remove the only black juror in the jury pool was constitutionally impermissible, racially prejudicial and violated [A]ppellant's right to a fair trial." *Id.* He argues that although there were multiple jurors who stated that they were less likely to believe a police officer, only the black juror was ultimately stricken for cause. *Id.* at 18. Further, Appellant claims that the trial court failed to "undertake a sensitive inquiry into [] circumstantial and direct evidence" to determine the Commonwealth's intent. *Id.* Therefore, Appellant concludes that he was deprived of the right to a fair trial.

The Commonwealth responds that Appellant failed to establish a *prima facie Batson* claim because "[s]imply claiming 'racial profiling' is insufficient."

Commonwealth's Brief at 11. Further, the Commonwealth notes that it "gave a race neutral reason" for striking the juror because the juror indicated on her questionnaire that she was less likely to believe a police officer. The Commonwealth contends that "[a]lthough she testified she could be fair and consider an officer's testimony to be no more or less credible than any other witnesses' testimony, the Commonwealth was free to discount that testimony." *Id.* Finally, the Commonwealth notes that "[s]triking a juror because they may disbelieve key witnesses in your case is a race neutral reason for the strike." *Id.* Therefore, the Commonwealth concludes that there was no ***Batson*** violation and Appellant is not entitled to relief. *Id.*

By way of background, the trial court summarized the facts underlying Appellant's ***Batson*** claim as follows:

> The ***Batson*** challenge was in fact preserved on March 13, 2002 during *voir dire* . . . . [T]he trial judge that presided over the proceeding is no longer serving as a Court of Common Pleas Judge.
>
> A review of the transcript indicates that the parties initially waived the transcription of *voir dire* but then contacted the trial court requesting a stenographer when they recognized a potential ***Batson*** issue. The Assistant District Attorney explained to the court as follows, "Well, we saw there was a black juror and I indicated before we started juror selection, I said, [to the defense attorney,] I think this is going to be a problem. [This juror] has one of the red flag issues. I said to protect your client, let's transcribe it." During a conference in chambers, the Commonwealth noted that [Appellant] is African American and charged with several crimes of robbery and initially misspoke when he stated that the four victims were Caucasian. He was corrected by defense counsel noting that one of the victims, Lonnie Lee, was black.

The trial court was informed that Juror Number 7 was an African American woman that answered the question as to whether she would be less likely to believe the testimony of a police officer affirmatively. The Commonwealth indicated that she was less likely to believe the testimony of a police officer because of his job and that she was also the victim of a crime. The Commonwealth further stated the reason they intended to exercise one of their peremptory challenges on Juror Number 7 as follows, "But frankly, for the record, because one of the pieces of evidence in this case is [Appellant] gave a statement wherein he said that the New York City police officer who arrested him in New York with some of the stolen property in his possession from this robber, he said that the New York City police officer was lying. And he told this to Chief Miles Collins and Officer Reinard []."

The Commonwealth further stated that "the police officer's testimony is going to be a major issue in the case" and Juror Number 7's statement that, "she is not going - she is less likely to believe his testimony" was the basis for the peremptory challenge. Juror Number 7 was interviewed at side bar and questioned by defense counsel as to her written response on the jury questionnaire as to whether she would be less likely to believe the statement of a police officer with regard to evidence "simply because they are a police officer." Juror Number 7 responded that she could be fair and impartial.

The Commonwealth exercised a challenge to Juror Number 7 and the defense again asserted the *Batson* objection stating that the juror was "being struck as a result of racial profiling". The Defense stated as follows: "She is of the same racial class as [Appellant] and there does not seem to be any proper cause to strike her other than the fact that she is of the same race as [Appellant]." The parties conducted argument outside of the presence of the jury.

When asked to place the basis of the objection of record, the defense maintained that upon interview of the potential juror she stated she did not have "any problem in believing the testimony of a police officer over—or believing the testimony of a police officer as any witness."

Defense counsel further argued in pursuing the *Batson* challenge: "I oppose simply because she is of the same race as [Appellant]. This is racial profiling. There does not seem to be a basis of this

—your objection or any reason to strike her other than the fact she is black as the same as [Appellant]."

Upon completion of the argument on the **Batson** challenge, the trial court ruled as follows, "On that basis, you haven't established a *prima facie* case which would require the prosecution to put forth the striking; therefore, your motion is denied."

Trial Ct. Op. at 35-41.

A **Batson** claim presents mixed questions of law and fact. **Commonwealth v. Edwards**, 177 A.3d 963, 971 (Pa. Super. 2018). Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous. **Id.** This Court has explained:

In **Batson**, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution. When a defendant makes a **Batson** challenge during jury selection:

First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

**Id.** (citations and quotation marks omitted). "The trial court should consider the totality of circumstances when determining whether the prosecutor acted with discriminatory intent or engaged in purposeful discrimination." **Commonwealth v. Towles**, 106 A.3d 591, 602 (Pa. 2014) (citation omitted).

This Court must give great deference to the trial court's finding about the absence of discriminatory intent in peremptory challenges, and we will not overturn it unless it is clearly erroneous. *See id.*

Here, the trial court addressed Appellant's *Batson* claim as follows:

In the case at bar, the trial court reviewed the basis of the *Batson* objection. The defense asserted that "I oppose simply because she is of the same race as [Appellant]. This is racial profiling. There does not seem to be a basis of this - your objection or any reason to strike her other than the fact she is black as the same as [Appellant]." In reviewing the factors for *prima facie*, [Appellant] is a member of a cognizable racial group, however in turning to the second prong, the only argument articulated was that the challenge to Juror Number 7 was racial profiling. No other relevant circumstances were put forth.

In the recent unreported case, ***Commonwealth v. Mills***, 1045 EDA 2018, 2020 WL 1490949 (Pa. Super. filed. Mar. 27, 2020) that is argued for persuasive value only, the Commonwealth challenged the single African American venire person. A ***Batson*** challenge was not raised by the defendant, but the Commonwealth wanted to note for the record that the venire person said she was less likely to believe the testimony of a police officer and many police officers were set to testify. The venire person also had a nephew that was awaiting trial in a similar case. The appellate court reviewed the claims set forth in ***Mills***, noting that the striking of the only African American venire person from the pool of potential jurors would establish a *prima facie* case of purposeful discrimination in that case. It then turned to the second step of the ***Batson*** analysis noting the Commonwealth proffered a race-neutral explanation for striking the juror.

In the case at bar, the Commonwealth immediately notified defense counsel that Juror Number 7 answered the question regarding the believability of a police officer in a concerning way. The Commonwealth noted that she answered a question creating a red flag issue. It was the Commonwealth that told [Appellant] that despite the agreement to waive the transcription, it was in [Appellant's] best interest to transcribe the *voir dire.*

The trial court directed [Appellant] to "Make your challenge." The only basis offered in support of the objection to the challenge was racial profiling. [Appellant] did not offer any other circumstances giving rise to an inference that the juror was challenged on account of race. The trial court replied, "On that basis, you haven't established a *prima facie* case which would require the prosecution to put forth the striking; therefore your motion is denied." The trial court determined that [Appellant] failed to establish a *prima facie* case and stopped the **Batson** analysis.

If the appellate court deems that a *prima facie* cause was in fact articulated, the record establishes that [Appellant] did not prove the second prong of the analysis in that the Commonwealth offered a race-neutral reason as to the peremptory challenge as follows:

> And Juror 7 said she is less likely to believe the testimony of a police officer because of his job and she was also the victim of a crime. But frankly, for the record, because one of the pieces of evidence in this case is [Appellant] gave a statement wherein he said that the New York City police officer who arrested him in New York with some of the stolen property in his possession from this robber, he said that the New York City police officer was lying. And he told this to Chief Miles Collins and Officer Reinard []. Obviously, the police officer's testimony is going to be a major issue in the case. And I indicated to [defense counsel], it is no doubt that I want - I am going to exercise one of my peremptory [challenges] because of her statement that she is not going - she is less likely to believe his testimony.

A review of the totality of the circumstances as placed of record illustrates that the Commonwealth offered a race-neutral basis and explanation for using the peremptory challenge. This claim as offered on direct appeal must fail.

Trial Ct. Op. at 39-41.

Based on our review of the record, we discern no legal or factual error in the trial court's conclusions. **See Edwards**, 177 A.3d at 971. Because the Commonwealth provided a race-neutral explanation for striking Juror 7, we cannot conclude that the trial court's rejection of Appellant's **Batson** claim

was 'clearly erroneous.'" ***See Towles***, 106 A.3d at 602; ***Edwards***, 177 A.3d at 971.  Under these circumstances, Appellant is not entitled to relief.

**Speedy Trial Rights**

Appellant next argues that the Commonwealth violated his speedy trial rights by failing to bring his case to trial within the time periods required by Pa.R.Crim.P. 600, the Interstate Agreement on Detainers Act, and the Uniform Agreement on Detainers Act.  Appellant's Brief at 29.

Rule 600 Claim

Pursuant to Rule 600, a criminal trial must "commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). After 365 days have passed, a defendant "may file a written motion requesting that the charges be dismissed with prejudice." ***Id.*** at 600(D)(1).  To preserve a Rule 600 claim, a defendant must file a written motion to dismiss prior to the commencement of trial.  ***See Commonwealth v. Brock***, 61 A.3d 1015, 1020 (Pa. 2013) (stating that "a motion to dismiss pursuant to [Rule] 600 must be made in writing, and a copy of such motion must be served on the Commonwealth's attorney").

Here, to the extent Appellant seeks relief based on Rule 600, our review of the record confirms that he did not file a pretrial motion to dismiss. Therefore, the trial court did not have an opportunity to conduct a hearing on,

or even consider, a Rule 600 claim.[6] *See Commonwealth v. Hunt*, 858 A.2d 1234, 1241 (Pa. Super. 2004) (stating that Rule 600 claims must be presented to the trial court while it has jurisdiction over the matter since the trial court must conduct a hearing to assess the amount of excludable time); *see also Commonwealth v. Brock*, 61 A.3d 1015, 1020 (Pa. 2013).  Therefore, Appellant's Rule 600 claim is waived.

<u>Interstate Agreement on Detainers and Extradition Act[7] Claims</u>

Our Supreme Court has described the IAD as follows:

> The IAD is an agreement between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States, that establishes procedures for the transfer of prisoners incarcerated in one jurisdiction to the temporary custody of another jurisdiction which has lodged a detainer against a prisoner.  Unlike a request for extradition, which is a request that the state in which the prisoner is incarcerated transfer custody to the requesting state, a detainer is merely a means of informing the custodial jurisdiction that there are outstanding charges pending in another jurisdiction and a request to hold the prisoner for the requesting state or notify the requesting state of the prisoner's imminent release.

*Davis*, 786 A.2d at 175.

---

[6] To the extent Appellant alleges that the trial court dismissed other charges based on a violation of Rule 600, *see* Appellant's Brief at 29, that claim is not supported by the record.

[7] Like the IAD, the Extradition Act "establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding." *Commonwealth v. Davis*, 786 A.2d 173, 175 (Pa. 2001).  "Unlike the IAD, the Extradition Act applies to persons at liberty as well as to incarcerated prisoners serving a sentence." *Id.*

Pursuant to Article III of the IAD, a prisoner against whom a detainer has been lodged may file a "written notice and request for disposition" requesting that he be transferred to the jurisdiction that filed the detainer and brought to trial within 180 days.  42 Pa.C.S. § 9101, Article III(a); ***see also*** Article III(b) (setting forth the requirements and the process for the prisoner's request).

> Article IV of the IAD provides that a prosecutor is
>
> entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated[.]

42 Pa.C.S. § 9101, Article IV(a).  Under Article IV, "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."  42 Pa.C.S. § 9101, Article IV(c).  However, our Supreme Court has held that the 120-day requirement set forth in Article IV "is not triggered unless the Commonwealth files a detainer against an individual **and then** files a request for custody of that individual." ***Commonwealth v. Leak***, 22 A.3d 1036, 1040 (Pa. Super. 2011) (discussing ***Davis***, 786 A.2d at 175).

Here, the record contains no indication that Appellant filed a motion to dismiss under the IAD.  Therefore, the issue is likely waived.  ***See***

- 15 -

*Commonwealth v. Blackburn*, 414 A.2d 638, 641 (Pa. Super. 1979); *see also* Pa.R.A.P. 302 (stating that "issues that are not raised in the lower court are waived and cannot be raised for the first time on appeal"). In any event, although Appellant agreed to waive his extradition and return to Pennsylvania, there is no indication that he filed a written notice and request for disposition of the charges against him pursuant to Article III. *See* 42 Pa.C.S. § 9101, Article III(a). Therefore, the 180-day period set forth in Article III did not apply. *See id.*

Similarly, although the Commonwealth lodged a detainer against Appellant after he was arrested in New York, there is no indication that the Commonwealth made a separate request seeking temporary custody of Appellant under Article IV of the IAD. As such, the 120-day requirement set forth in Article IV did not apply. *See Davis*, 786 A.2d at 175; *see also Leak*, 22 A.3d at 1040. Under these circumstances, Appellant is not entitled to relief.

**Sentencing Claims**

Finally, Appellant challenges the legality of his mandatory-minimum sentences under Section 9712(a). Appellant's Brief at 11. Appellant challenges the constitutionality of Section 9712(a) generally based on *Alleyne*. *Id.* Appellant also argues that the mandatory-minimum sentences were unconstitutional as applied to him. *Id.*

As noted previously, this Court held that Section 9712(a) is unconstitutional based on *Alleyne*. *See Valentine*, 101 A.3d at 812. It is

well settled that **Alleyne** does not apply retroactively on collateral review. **See Commonwealth v. Washington**, 142 A.3d 810, 811 (Pa. 2016).

However, our Supreme Court has held that "where a direct appeal *nunc pro tunc* is granted, the conviction in question was never 'final' for purposes of determining whether the litigant is entitled to the benefit of a new rule of law announced subsequent to his conviction." **Commonwealth v. Ranger**, 196 A.3d 237, 239 (Pa. Super. 2018) (discussing **Commonwealth v. Johnson**, 304 A.2d 139 (Pa. 1973); **Commonwealth ex rel. Smith v. Myers**, 438 Pa. 218, 261 A.2d 550 (Pa. 1970)). Therefore, a case is "considered 'pending on direct review' for purposes of the application of [a] new rule [when] the 'direct review' results from the reinstatement of direct appellate rights, *nunc pro tunc*, subsequent to the date the new rule was announced." **Ranger**, 196 A.3d at 239.

Here, the trial court concluded that Appellant was not entitled to relief based on **Alleyne** because that decision does not apply retroactively on collateral review. However, based on our review of the record, we are constrained to disagree with the trial court's rationale. Because the trial court reinstated Appellant's direct appeal rights *nunc pro tunc* after **Alleyne** was decided, Appellant is entitled to the benefit of that decision. **See Ranger**, 196 A.3d at 239. Therefore, to the extent Appellant was sentenced to mandatory terms of imprisonment for his robbery convictions under Section 9712, those sentences are illegal. Under these circumstances, we must vacate the entire judgment of sentence and remand the matter for resentencing. **See**

*Commonwealth v. Motley*, 177 A.3d 960, 963 (Pa. 2018) (stating that, if vacating part of an appellant's sentence upsets the trial court's overall sentencing scheme, we must vacate the entire judgment of sentence and remand for resentencing).

Accordingly, we affirm Appellant's convictions and remand the matter for resentencing.

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/26/2021