J-S17003-17

2018 PA Super 1

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DERRICK EDWARDS, | |
| Appellant | No. 436 EDA 2015 |

Appeal from the Judgment of Sentence of January 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002611-2013
CP-51-CR-0002614-2013
CP-51-CR-0002617-2013
CP-51-CR-0002815-2013
CP-51-CR-0002820-2013
CP-51-CR-0002853-2013
CP-51-CR-0002862-2013
CP-51-CR-0002864-2013

BEFORE:    OLSON, STABILE AND MUSMANNO, JJ.

OPINION BY OLSON, J.:                          **FILED JANUARY 02, 2018**

Appellant, Derrick Edwards, appeals from the judgment of sentence entered on January 9, 2015. On appeal, Appellant raises several objections, including, *inter alia*, challenges to the sufficiency of the evidence and allegations that the Commonwealth harbored racial animus in the use of its peremptory strikes. Although we hold that listing the races and genders of prospective jurors on a peremptory strike sheet, while ill-advised, does not *per se* violate the Equal Protection Clause of the Fourteenth Amendment as interpreted by *Batson v. Kentucky*, 476 U.S. 79 (1986), we conclude that, under the totality of circumstances, Appellant demonstrated a *Batson*

violation by showing that the Commonwealth struck at least one juror with discriminatory intent. Accordingly, we vacate Appellant's judgment of sentence and remand for a new trial.

The factual background of this case is as follows. At approximately 5:50 a.m. on September 18, 2012, Appellant and Rasheed Thomas ("Thomas") robbed Keith Crawford ("Crawford") at gunpoint. Approximately five minutes later, Appellant and Thomas approached Kevin Cunningham ("Cunningham") as he waited at a bus stop. Appellant put a firearm in Cunningham's face and said, "You know what this is." When Cunningham did not lie down on the ground, Appellant pushed him to the ground and struck him twice in the back of the head with the firearm. Appellant and Thomas took Cunningham's cash, a set of barber clippers, a Bible, an engagement ring, and a cellular telephone.

At approximately 2:00 a.m. on October 1, 2012, two African-American males approached Whitney Coates ("Coates"). One of the males pointed a firearm at her face and said "You know what it is." Coates gave the assailants her cellular telephone. Approximately 30 minutes later, Appellant and Thomas attempted to rob Donald Coke ("Coke") at gunpoint. When Coke resisted, Appellant shot him twice in the left arm. Appellant and Thomas then fled in an SUV driven by Henry Bayard ("Bayard"). The SUV belonged to Bayard's mother.

Approximately 15 minutes later, Appellant and Bayard robbed Duquan Crump ("Crump") at gunpoint. They fled the scene with Crump's wallet, cellular telephone, and watch. Approximately 15 minutes later, Appellant and Thomas robbed Shanice Jones ("Jones") at gunpoint. They fled with Jones' wallet and cellular telephone. Approximately 15 minutes later, two African-American males approached Hector De Jesus ("De Jesus"). One of the males pointed a firearm at him and ordered him to hand over his belongings. The assailants took $150.00, an iPod touch, a wallet, and a backpack containing clothes and a taser.

Approximately 45 minutes later, an African-American male exited a vehicle and pointed a firearm at Jonas Floyd ("Floyd"). Another African-American male then exited the vehicle. The assailants took Floyd's tote bag, headphones, cellular telephone, wallet, keys, and United States currency. Shortly after this robbery, police located Appellant, Thomas, and Bayard inside the SUV that belonged to Bayard's mother. In addition to the firearms used in the robberies, police recovered a significant amount of the goods stolen from the eight victims listed above.

The relevant procedural history of this case is as follows. On November 2, 2012, the police charged Appellant *via* eight criminal complaints with various offenses relating to the robberies described above. A preliminary hearing was held on February 26, 2013. At the conclusion of that hearing, Appellant was held for court on all charges. On March 6, 2013,

the Commonwealth charged Appellant *via* eight criminal informations with essentially the same crimes as those charged in the criminal complaints.

On October 13 and 14, 2014, Appellant moved to quash the criminal informations. In those motions to quash, Appellant argued that the evidence presented at the preliminary hearing was insufficient to make out *prima facie* cases against him. On October 27, 2014, the trial court denied the motions to quash.

Jury selection began on October 28, 2014. Prior to jury selection, Appellant asked the trial court how it conducted voir dire. The trial court responded that it would ask prospective jurors questions and the attorneys would not be permitted to make inquiries. Appellant did not object to this procedure. The trial court's staff placed the race and gender of each prospective juror on the juror strike sheet prior to handing the sheet to counsel. Appellant objected to this process and the trial court overruled the objection. Once the parties exercised their respective peremptory strikes, Appellant, pursuant to **Batson**, objected to the Commonwealth striking four prospective African-American jurors.[1] The trial court determined that the Commonwealth exercised its strikes in a non-prejudicial manner and overruled Appellant's objection.

---

[1] With its eight peremptory challenges, the Commonwealth struck seven prospective African-American jurors. Appellant objected to the Commonwealth striking four of the seven prospective jurors. It is unclear why Appellant did not challenge the Commonwealth's peremptory strikes of the other three prospective African-American jurors.

Appellant's trial commenced on October 29, 2014.[2]  At trial, Thomas appeared as a witness for the prosecution but he refused to identify his co-conspirators.  The Commonwealth, therefore, sought permission to read Thomas' confession into the record.  Appellant objected and the trial court overruled that objection.  The Commonwealth also presented an audio recording of Appellant from prison.  Appellant objected to the admission of the recording and the trial court overruled that objection.

On November 4, 2014, the jury found Appellant guilty of eight counts of robbery,[3] eight counts of conspiracy to commit robbery,[4] eight counts of carrying a firearm without a license,[5] eight counts of carrying a firearm on the streets of Philadelphia,[6] eight counts of possessing an instrument of crime,[7] attempted murder,[8] aggravated assault,[9] and conspiracy to commit aggravated assault.[10]

---

[2] On September 22, 2014, Thomas pled guilty to multiple counts each of robbery, conspiracy to commit robbery, and carrying a firearm without a license.  Thus, he did not go to trial as Appellant's co-defendant.

[3] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[4] 18 Pa.C.S.A. §§ 903, 3701.

[5] 18 Pa.C.S.A. § 6106(a)(1).

[6] 18 Pa.C.S.A. § 6108.

[7] 18 Pa.C.S.A. § 907(a).

[8] 18 Pa.C.S.A. § 901, 2502.

Over six weeks later, on December 22, 2014, Appellant moved for a mistrial. In that motion, based upon the statements of two American Sign Language interpreters present during jury deliberations, Appellant averred that jurors conducted research about the case during deliberations. The trial court denied the motion that same day. On January 9, 2015, the trial court sentenced Appellant to an aggregate term of 22 to 44 years' imprisonment. This timely appeal followed.

On April 6, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal ("concise statement"). *See* Pa.R.A.P. 1925(b). Appellant failed to file a timely concise statement and, on October 7, 2015, this Court remanded this case to the trial court to permit Appellant to file a *nunc pro tunc* concise statement. On October 28, 2015, Appellant filed his concise statement. On February 24, 2016, the trial court issued its Rule 1925(a) opinion. This case is now ripe for disposition.

Appellant raises several issues for our review, *inter alia*:[11]

_____
*(Footnote Continued)*

[9] 18 Pa.C.S.A. § 2702(a)(1).

[10] 18 Pa.C.S.A. §§ 903, 2702.

[11] We address Appellant's first two issues because he would be entitled to discharge if we granted relief on those claims. We address Appellant's third issue because we conclude that he is entitled to relief on that claim. As we remand for a new trial, we decline to address Appellant's remaining issues which would only entitle him, at most, to a new trial. *See Drew v. Work*, 95 A.3d 324, 338 (Pa. Super. 2014) (citation omitted).

*(Footnote Continued Next Page)*

1. Did the trial court commit an error of law and/or abuse its discretion in failing to issue a judgment of acquittal[?]

2. Did the trial court commit an error of law and/or abuse its discretion in failing to quash the return of the magistrate's transcript . . . where the Commonwealth failed to present material witnesses at a preliminary hearing or supplement a devoid record prior to trial?

3. Did the trial court commit an error of law and/or abuse its discretion in denying Appellant's **Batson** [] motion by denoting on its jury sheet the race and gender of each potential juror and allowing the prosecution to strike jurors on the basis of race?

Appellant's Brief at 5-6 (certain capitalization omitted).[12]

In his first issue Appellant argues that the evidence presented at trial as to four of the robberies was insufficient. "The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Johnson**, 160 A.3d 127, 136 (Pa. 2017) (citation omitted). In assessing Appellant's sufficiency challenge, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Grays**, 167 A.3d 793, 806 (Pa.

*(Footnote Continued)* ————————

Our dissenting colleague similarly declines to address Appellant's remaining issues because of our disposition of this appeal. Thus, he merely states that he would reach a different conclusion on Appellant's **Batson** claim. **See Dissenting Opinion**, **post** at 1-2 n.1.

[12] We have re-numbered the issues for ease of disposition.

Super. 2017) (citation omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. . . . [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence." *Commonwealth v. Waugaman*, 167 A.3d 153, 155–156 (Pa. Super. 2017) (citation omitted).

Appellant contends that the evidence was insufficient to convict him of crimes related to the Jones, Crump, and Crawford robberies because those three victims failed to appear and did not testify at trial. Appellant concedes, however, that the property stolen from these three victims was found in the SUV occupied by Appellant, Thomas, and Bayard. *See* Appellant's Brief at 20. Moreover, as noted above, Thomas' confession was read to the jury at trial.[13] *See* N.T., 10/28/14, at 28-77. In that confession, Thomas implicated Appellant in the robberies of Jones, Crump, and Crawford. Moreover, Appellant stipulated at trial that he did not possess a valid license to carry firearms at the time the robberies occurred. N.T., 11/3/14, at 40. Combined, this stipulation, Thomas' confession, and the recovery of items taken during the robberies from the SUV occupied by Appellant constituted sufficient evidence for the jury to conclude that

---

[13] We explicitly decline to opine upon whether the trial court properly admitted Thomas' confession into evidence because, when considering the sufficiency of the evidence, we must consider both properly and improperly admitted evidence. *Commonwealth v. Kane*, 10 A.3d 327, 332 (Pa. Super. 2010), *appeal denied*, 29 A.2d 796 (Pa. 2011).

Appellant committed those three robberies and offenses related to those incidents.

Appellant also argues that the evidence was insufficient to convict him of robbing Coke because Coke did not testify at trial. Once again, however, Thomas implicated Appellant in Coke's robbery. Furthermore, Coke's robbery followed the same modus operandi of the other robberies. *See Commonwealth v. Cullen*, 489 A.2d 929, 936 (Pa. Super. 1985) (modus operandi of serial robber can be used to prove identity). Combined, the stipulation that Appellant did not possess a valid license to carry firearms, Thomas' statement, and the similarity of the robberies in this case provided sufficient evidence to convict Appellant of robbing Coke and the related offenses.

In his second issue, Appellant argues that the trial court erred in denying his motions to quash because there was insufficient evidence presented at the preliminary hearing to hold him for trial. This issue is moot. "If events occur to eliminate the claim or controversy at any stage in the process, the [issue] becomes moot." *In re S.H.*, 71 A.3d 973, 976 (Pa. Super. 2013) (citation omitted). Our Supreme Court has held that "once a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." *Commonwealth v. Sanchez*, 82 A.3d 943, 984 (Pa. 2013) (citation omitted). Accordingly, Appellant's second issue is moot.

In his third issue, Appellant argues that the jury selection process in this case violated *Batson*. First, he contends that the trial court violated *Batson* as a matter of law by listing the races and genders of potential jurors on the peremptory strike sheet. Second, he argues that the Commonwealth violated *Batson* by striking four African-American members of the venire. "A *Batson* claim presents mixed questions of law and fact." *Riley v. Taylor*, 277 F.3d 261, 277 (3d Cir. 2001) (*en banc*). Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous.

"In *Batson*, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution." *Commonwealth v. Reid*, 99 A.3d 470, 484 (Pa. 2014) (citation omitted). When a defendant makes a *Batson* challenge during jury selection:

> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

*Commonwealth v. Watkins*, 108 A.3d 692, 708 (Pa. 2014) (citation omitted).

Initially, we consider whether Appellant properly preserved his *Batson* claim for appellate review. *Cf.* Pa.R.A.P. 302(a) ("Issues not raised in the

lower court are waived and cannot be raised for the first time on appeal."). The Commonwealth argues that Appellant "waived this claim by failing to set forth the race of: all the impaneled jurors, all of the venirepersons the Commonwealth struck, and all the venirepersons acceptable to the Commonwealth whom he struck." Commonwealth's Brief at 17-18, *citing* **Commonwealth v. Thompson**, 106 A.3d 742, 752 (Pa. 2014); **see** **Commonwealth v. Spence**, 627 A.2d 1176, 1182 (Pa. 1993).[14] The Commonwealth fails to acknowledge, however, that this information was included on the peremptory strike sheet used by the parties. As noted above, the peremptory strike sheet included the race and gender of every prospective juror. It also included codes indicating which party (if either) objected to a juror and whether that objection was for cause or was a peremptory strike. Finally, it specifies the racial composition of the jury seated for trial. Appellant cited the peremptory strike sheet when making

---

[14] In **Spence**, our Supreme Court held that the objecting party must include the following information in its objection in order to preserve a **Batson** claim: the race of the stricken prospective juror(s), the race of prospective juror(s) acceptable to the striking party but stricken by the objecting party, and the racial composition of the jury seated for trial. **Spence**, 627 A.2d at 1182; **see Thompson**, 106 A.3d at 752. The United States Court of Appeals for the Third Circuit has held that the requirements set forth in **Spence** are an unreasonable application of federal law. **See Holloway v. Horn**, 355 F.3d 707, 728–729 (3d Cir. 2004). Nonetheless, our Supreme Court has refused to modify these requirements. **See Commonwealth v. Fletcher**, 861 A.2d 898, 910 n.15 (Pa. 2004). We, of course, are "duty-bound to effectuate [our Supreme] Court's decisional law." **Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.**, 20 A.3d 468, 480 (Pa. 2011) (citations omitted).

his **Batson** challenge. Therefore, Appellant's failure to repeat orally the information during his **Batson** challenge did not waive his **Batson** claim.[15]

Turning to the merits of Appellant's **Batson** claim, we first address his argument that listing the races and genders of prospective jurors on the peremptory strike sheet violated **Batson** as a matter of law. Although we find the trial court's practice both ill-advised and inappropriate, there are compelling grounds for refusing to adopt a *per se* rule that precludes this practice under **Batson**. First, there is no precedent for such a holding. Appellant is unable to cite a single case from any jurisdiction which holds that this practice is a *per se* violation of **Batson**.

Second, adoption of a *per se* rule runs counter to the rationale of **Batson**, and that of several cases interpreting and applying the decision, all of which have encouraged courts to consider all relevant factors. **Batson**, 476 U.S. at 96 ("[T]he defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race."); **see Carrillo v. Texas**, 2007 WL 2052070, *3 (Tex. App. July 19, 2007) ("[T]he **Batson** decision is one of fact, not of *per se* rules of law.");

_____

[15] Neither the Commonwealth nor our learned colleague in his dissent cite to any additional information required by **Spence** that the trial court would have gained if Appellant repeated orally the information contained on the strike sheet. Instead, the dissent and the Commonwealth place the form of the information over the substance. **Cf. Commonwealth v. Farrow**, 168 A.3d 207, 219 (Pa. Super. 2017) (This Court's intent is not to "elevate form over substance.").

*Louisiana v. Duncan*, 802 So.2d 533, 550 (La. 2001) (internal quotation marks and citation omitted) ("[A]ttempts to fashion absolute, *per se* rules are inconsistent with **Batson** in which the [Supreme Court of the United States] instructed trial courts to consider all relevant circumstances."); *United States v. Grandison*, 885 F.2d 143, 147 (4th Cir. 1989), *quoting* *United States v. Sanqineto–Miranda*, 859 F.2d 1501, 1521 (6th Cir. 1988) ("The Supreme Court's mandate in **Batson** to consider all the facts and circumstances means that we cannot lay down clear rules[.]"); *see also* *Miller-El v. Dretke*, 545 U.S. 231, 247 n.6 (2005) ("A *per se* rule that a defendant cannot win a **Batson** claim unless there is an exactly identical white juror [unaffected by the challenged practice] would leave **Batson** inoperable; potential jurors are not products of a set of cookie cutters."). Accordingly, although we do not countenance the practice, we hold that listing the races and genders of potential jurors on the peremptory strike sheet did not violate **Batson** as a matter of law.

Having determined that listing the race and gender of prospective jurors does not constitute a *per se* **Batson** violation, we turn to a specific analysis of Appellant's **Batson** claim. As noted above, the first step in the **Batson** analysis is determining whether Appellant made "a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race[.]" **Watkins**, 108 A.3d at 708 (citation omitted). As our Supreme Court has explained:

> To establish a *prima facie* case of purposeful discrimination[,] the defendant must show that he is a member of a cognizable racial group, that the prosecutor exercised a peremptory challenge or challenges to remove from the venire members of the defendant's race; and that other relevant circumstances combine to raise an inference that the prosecutor removed the juror(s) for racial reasons.

*Commonwealth v. Cook*, 952 A.2d 594, 602 (Pa. 2008) (internal alterations, ellipsis, footnote, and citation omitted).

We agree with the trial court's conclusion that Appellant established a *prima facie* case of purposeful discrimination.[16] Appellant is African-American and the Commonwealth struck seven African-American prospective jurors. Furthermore, although listing the races and gender of prospective jurors on the peremptory strike sheet did not qualify as a *per se* **Batson** violation, it is a relevant circumstance that raised an inference that the prosecutor struck the jurors based on their race. Therefore, we agree with

---

[16] Our learned colleague disagrees with our characterization of the trial court's conclusion that the first prong of the **Batson** test was met. According to our dissenting colleague, the trial court never found that Appellant established a *prima facie* case of purposeful discrimination. Although the trial court did not use the magic words "*prima facie* case of purposeful discrimination," it is evident by the trial court's words and actions that it made this finding. The trial court considered whether the second step of the **Batson** test was met which it would not have done had it found that Appellant failed to establish the first step. Moreover, as our dissenting colleague notes, even if the trial court failed to make this finding, "we may turn directly to the question of whether the appellant had carried his burden of proving that the prosecution had struck the juror based on race." **Dissenting Opinion**, **post** at 6 (internal quotation marks omitted), *quoting* **Commonwealth v. Sanchez**, 36 A.3d 24, 45 (Pa. 2011).

the trial court that Appellant established a *prima facie* case of purposeful discrimination.

The second step in the **Batson** analysis is the determination of whether the Commonwealth provided race-neutral explanations for striking the prospective jurors. **Watkins**, 108 A.3d at 708 (citation omitted). As our Supreme Court explained:

> The second prong of the **Batson** test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a *prima facie* case is proven, does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

**Commonwealth v. Harris**, 817 A.2d 1033, 1043 (Pa. 2002) (internal quotation marks and citations omitted).

Here again, we agree with the trial court's conclusion that the Commonwealth proffered race-neutral explanations for striking the four African-American jurors in question. The Commonwealth stated that it struck Jurors 56 and 57 because they were talking to each other and joking throughout the voir dire process. N.T., 10/28/14, at 93. The Commonwealth also stated that Juror 56 was nodding and making faces while the trial court discussed the credibility of police officers. **Id.** The Commonwealth stated that it struck Juror 61 because she didn't identify the neighborhood in which she lived on the juror questionnaire and her ex-

- 15 -

husband was a police officer. *Id.* Finally, the Commonwealth stated that it struck Juror 67 because:

> when she was being questioned by [the trial court] she was leaning back, seemed a little cavalier, had her arm resting on the back and while we were conducting voir dire in the back, she was sitting there with her arms crossed and her head kind of nodded, seemed guarded and again as if she didn't want to be here, so I didn't think she would be a fair and competent juror.

*Id.* at 94. All of these reasons are facially acceptable. Accordingly, we agree with the trial court that the Commonwealth offered race-neutral reasons for striking the four African-Americans in question.

The third step in a *Batson* analysis involves determining if the defense carried its burden of proving purposeful discrimination. *Watkins*, 108 A.3d at 708 (citation omitted). "It is at this stage that the persuasiveness of the facially-neutral explanation proffered by the Commonwealth is relevant." *Commonwealth v. Towles*, 106 A.3d 591, 601 (Pa. 2014) (citation omitted).[17]

---

[17] The Commonwealth cites *Cook* and *Commonwealth v. Washington*, 927 A.2d 586 (Pa. 2007), for the proposition that a *Batson* claim fails whenever the prosecution states race-neutral reasons for disputed peremptory challenges, even if the proffered explanation lacks persuasive force or plausibility. *See* Commonwealth's Brief at 18. In essence, the Commonwealth argues that the defense cannot prevail where the Commonwealth satisfies the second step of the *Batson* inquiry. This argument is inconsistent with prevailing jurisprudence. Every case from the Supreme Court of the United States and our Supreme Court interpreting *Batson* requires the trial court to proceed to the third step of the *Batson* inquiry if the defendant demonstrates a *prima facie* case of discrimination and the prosecutor provides a race-neutral explanation. *E.g.*, *Miller-El*, 545 U.S. at 239-240; *Purkett v. Elem*, 514 U.S. 765, 769 (1995) (*per curiam*)
*(Footnote Continued Next Page)*

In this case, the trial court did not make an explicit determination during voir dire that Appellant failed to prove purposeful discrimination. *See* N.T., 10/28/14, at 94. The trial court's denial of Appellant's *Batson* challenge, along with the reasoning in its Rule 1925(a) opinion, *see* Trial Court Opinion, 2/24/16, at 19, indicates that the trial court implicitly found that Appellant failed to prove purposeful discrimination. As our Supreme Court explained, a

> trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous. Such great deference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations. Moreover, there will seldom be much evidence on the decisive question of whether the race-neutral explanation for a peremptory challenge should be believed; the best evidence often will be the demeanor of the prosecutor who exercises the challenge.

*Commonwealth v. Williams*, 980 A.2d 510, 531 (Pa. 2009) (internal quotation marks and citation omitted).

Although we must exercise great deference in reviewing the trial court's factual finding with respect to discriminatory intent, we do not

---

*(Footnote Continued)*

("The prosecutor's proffered explanation . . . is race neutral and satisfies the prosecution's step two burden of articulating a nondiscriminatory reason for the strike. . . . Thus, the inquiry properly proceeded to step three, where the state court found that the prosecutor was not motivated by discriminatory intent."); *Commonwealth v. Roney*, 79 A.3d 595, 619 (Pa. 2013) (citation omitted) ("If a race-neutral explanation is tendered, the trial court must then proceed to the third prong of the test[.]"); *Cook*, 952 A.2d at 611.

function as a rubber stamp. *Cf. Foster v. Chatman*, 136 S.Ct. 1737, 1747-1755 (2016) (even under Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA's") double deferential standard of review, the trial court's factual finding with respect to discriminatory intent was clearly erroneous); *Commonwealth v. Monahan*, 860 A.2d 180, 185 (Pa. Super. 2004), *appeal denied*, 878 A.2d 863 (Pa. 2005) (In the context of a discretionary aspects of sentencing claim, in which we employ a highly deferential standard of review, we do not act as a rubber stamp.). In this case, the evidence establishes that the Commonwealth struck Juror 67 with discriminatory intent; therefore, we conclude that the trial court's factual finding was clearly erroneous.[18]

---

[18] In this case, Appellant did not attempt to rebut the Commonwealth's race-neutral explanations. He also did not withdraw his *Batson* challenge. Instead, Appellant believed that the reasons offered by the Commonwealth were so unpersuasive that he did not need to offer argument as to why the race-neutral explanations were pretextual. As the Supreme Court of Mississippi explained, a defendant

> is not procedurally barred from contesting the [prosecutor's] strikes of [] jurors for whom he did not provide rebuttal during the *Batson* hearing. Although the defendant **may** provide rebuttal, *Batson* does not **require** the opponent of a peremptory strike to rebut the [other party's] proffered race-neutral basis. Under *Batson*'s three-step procedure, once the [prosecutor] has presented race-neutral reasons to rebut the defendant's *prima facie* case, the trial court should determine whether the defendant has established purposeful discrimination.

*Corrothers v. Mississippi*, 148 So.3d 278, 345–346 (Miss. 2014) (emphasis in original), *citing Batson*, 476 U.S. at 97-98; *see Colorado v. O'Shaughnessy*, 275 P.3d 687, 694 (Colo. App. 2010), *aff'd*, 269 P.3d
*(Footnote Continued Next Page)*

We find three factors strongly indicative of discriminatory intent in this case; first, as noted above, the identification of the race and gender of the potential jurors on the peremptory strike sheet.[19] Although this was not a *per se* **Batson** violation, when combined with the other factors listed below it supports an inference of racial discrimination. Second, the probability of the Commonwealth striking such a disproportionate number of African-Americans by chance is extremely low. Finally, the Commonwealth's race-neutral explanation for striking Juror 67 was wholly underpersuasive in that the Commonwealth relied on her supposedly inattentive posture to conclude that she would not discharge her duties as a juror in a fair and impartial manner.

During the peremptory strike process, 30 potential jurors were considered by the parties. Of those 30, 13 were African-American. The Commonwealth used seven of its eight peremptory strikes on African-

---

*(Footnote Continued)*

1233 (Colo. 2012) (citations omitted). Moreover, the Commonwealth does not cite, nor are we aware of, any decisions from our Supreme Court or this Court requiring such rebuttal. **Cf. Missouri v. Jones**, 471 S.W.3d 331, 334 (Mo. App. 2015) (Missouri requires such rebuttal in order to make a **Batson** challenge). We decline to adopt such a requirement in this case.

[19] The dissent asserts that the Commonwealth is not responsible for the trial court's actions in placing the race and gender of each prospective juror on the preemptory strike sheet. Although this is accurate, we note that when Appellant objected to having this information noted on the strike sheet, the Commonwealth objected to Appellant's objection. **See** N.T., 10/28/14, at 91. Moreover, the trial court's listing of the potential jurors' races and genders on the strike sheet is a part of the totality of the circumstances that we must evaluate when reviewing the trial court's **Batson** ruling.

Americans. An additional 14 potential jurors were Caucasian. The Commonwealth did not strike any of the Caucasian potential jurors. Finally, three of the potential jurors were neither Caucasian nor African-American. The Commonwealth exercised its last peremptory strike on one of those three individuals.

It does not take a statistician to understand that the probability of striking no Caucasians and striking at least 7 of 13 African-Americans by random chance is extremely small. Statistics alone are insufficient to prove discriminatory intent. *Commonwealth v. Johnson*, 139 A.3d 1257, 1282–1283 (Pa. 2016) (citations omitted). Statistics can be used, however, when considering the totality of the circumstances to determine if the Commonwealth exercised its peremptory strikes in a discriminatory manner. *See Commonwealth v. Ligons*, 971 A.2d 1125, 1144 (Pa. 2009).

The statistics in this case are startling. Unlike many cases addressed by our Supreme Court, in this case the Commonwealth exercised all eight of its peremptory strikes on racial minorities and seven of those eight on African-Americans. *See* Pa.R.Crim.P. 633, 634 (setting forth the number of peremptory strikes that the Commonwealth may exercise); *cf. Johnson*, 139 A.3d at 1281-1283 (Commonwealth struck seven African-Americans and seven non-African-Americans and did not exercise all of its peremptory challenges); *Commonwealth v. Roney*, 79 A.3d 595, 620-621 (Pa. 2013) (Commonwealth struck four Caucasians); *Commonwealth v. Hutchinson*,

25 A.3d 277, 287 (Pa. 2011) (Commonwealth struck eight Caucasians);

**Ligons**, 971 A.2d at 1143-1144 (Commonwealth struck two Caucasians and

did not exercise eight or nine of its peremptory strikes[20]). Although the

Commonwealth could not completely purge the jury in this case of African-

Americans because of the number of African-American members of the

venire, the Commonwealth greatly reduced the number of African-Americans

on the jury in this case by exercising all of its peremptory strikes and using

seven of those eight strikes on African-Americans. These probabilities,

combined with the identification of the potential jurors' races and genders on

the peremptory strike sheet and the proffered, but highly implausible, race-

neutral explanation for striking Juror 67, cause us to conclude that Appellant

met his burden in demonstrating that the Commonwealth struck Juror 67

with discriminatory intent.

Finally, the most important factor when considering the totality of the

circumstances is the race explanation offered by the Commonwealth. We

focus on the Commonwealth's race-neutral explanation for striking Juror 67,

which is reproduced in full **supra**. Essentially, the Commonwealth stated

that it struck Juror 67 because she did not seem pleased to be called to jury

duty. Although, as noted above, this was a facially race-neutral explanation,

this same rationale could be used to strike almost every potential juror in

---

[20] At one point, our Supreme Court referenced the Commonwealth not using eight of its preemptory strikes while at another point our Supreme Court referenced the Commonwealth not using nine of its preemptory strikes.

almost every case tried throughout Pennsylvania. Few (if any) citizens are thrilled when they receive a jury summons in the mail. Instead, they begrudgingly arrive at the courthouse to fulfill their civic duty (or avoid being arrested). The trial court acknowledged this reality twice during the jury selection process in this case. N.T., 10/28/14, at 5, 52.

The Commonwealth also stated that Juror 67 was leaning back in her chair with her arms crossed during the voir dire process. This, however, was encouraged by the trial court at the beginning of jury selection. *Id.* at 4 ("So sit back and relax"). There is no assertion that she was disruptive, that she ignored the trial court's instructions, or that she exhibited outward or palpable disinclination to discharge her duties as an impartial factfinder.

We find instructive the Supreme Court of the United States' decision in *Snyder v. Louisiana*, 552 U.S. 472 (2008). In *Snyder*, the prosecutor struck a prospective African-American juror because he appeared nervous and because of concerns regarding his student teaching position. The trial court contacted his college dean and alleviated any concerns regarding his student teaching duties. Nonetheless, the trial court overruled the defendant's *Batson* challenge and the state appellate courts affirmed. Justice Alito, writing for a seven-member majority, concluded that the trial court's factual finding on discriminatory intent was clearly erroneous. *Id.* at 484-485. Instead, considering the totality of the circumstances, the majority found the prosecution's explanation for striking the prospective

juror highly implausible and, therefore, pretextual. **See id.**; **see also Miller–El**, 537 U.S. at 339, *quoting* **Purkett v. Elem**, 514 U.S. 765, 768 (1995) (*per curiam*) (At the third "stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination."); **Commonwealth v. Garrett**, 689 A.2d 912, 917 (Pa. Super. 1997), *appeal denied*, 701 A.2d 575 (Pa. 1997) (citation omitted) ("An explanation which at first blush appears to be clear, specific and legitimate may be exposed as a pretext for racial discrimination when considered in the light of the entire voir dire proceeding."); **Commonwealth v. Jackson**, 562 A.2d 338, 350 (Pa. Super. 1989) (*en banc*) (Beck, J. opinion announcing the judgment of the court), *appeal denied*, 578 A.2d 926 (Pa. 1990) (citation omitted) (same).[21]

In both **Snyder** and the case at bar the trial court did not make an explicit factual finding that it witnessed the alleged demeanor relied upon by

---

[21] Judges Del Sole and Montemuro joined Judge Beck's opinion. Judge Popovich joined the relevant portions discussed in this decision (and that of our dissenting colleague). President Judge Cirillo filed a concurring opinion in which Judge Brosky joined. That concurring opinion stated that, "I therefore concur only in the conclusion that appellant has failed to show an equal protection violation and in the affirmance of the judgment of sentence." **Jackson**, 562 A.2d at 358 (Cirillo, J. concurring). Judge Tamilia filed a concurring opinion in which he stated that, "I concur in the result[.]" **Id.** at 358 (Tamilia, J. concurring). Judge McEwen filed a dissenting opinion which Judge Johnson joined. Thus, only four of the nine members of the *en banc* panel in **Jackson** joined the relevant portions of Judge Beck's opinion. Hence, it is only an opinion announcing the judgment of the court. Such an opinion is not binding upon this panel. **See Commonwealth v. Gorbea-Lespier**, 66 A.3d 382, 387 n.5 (Pa. Super. 2013), *appeal denied*, 77 A.3d 1259 (Pa. 2013) (citations omitted).

the prosecutor to strike the juror. *See Snyder*, 552 U.S. at 477 ("[T]he trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor.");[22] *see also* N.T., 10/28/14, at 94; Trial Court Opinion, 2/24/16, at 19. Moreover, in both *Snyder* and the case at bar the race-

---

[22] Our dissenting colleague argues that the Supreme Court of the United States rejected our reading of *Snyder* in *Thaler v. Haynes*, 559 U.S. 43 (2010) (*per curiam*). *See Dissenting Opinion*, *post* at 22-25. Our reading of *Snyder*, however, is consistent with *Thaler*. In *Thaler*, the Court explained that the failure of the *Snyder* trial court to note any personal recollection of the prospective juror's demeanor was only one factor it considered when determining that the trial court's factual finding was unsupported by the record. *See Thaler*, 559 U.S. at 48-49. Unlike *Snyder*, which was on direct review, *Thaler* was a *habeas corpus* proceeding. Hence, the Supreme Court of the United States rejected the United States Court of Appeals for the Fifth Circuit's interpretation of *Snyder* as a *per se* rule requiring such recollection in order for a federal court to apply AEDPA deference to a state court decision. *See id.* at 49; *see also Colorado v. Beauvais*, 393 P.3d 509, 518 (Colo. 2017) (explaining that *Thaler* rejected the Fifth Circuit's "broad characterization of *Snyder* as creating an express credibility finding requirement" while noting that "express credibility findings significantly aid effective appellate review"); *cf. Michigan v. Tennille*, 888 N.W.2d 278, 289-291 (Mich. App. 2016) (holding that under *Snyder* and *Thaler* an appellate court must examine the totality of the circumstances when determining if a trial court's factual finding is supported by the record in absence of an explicit finding regarding a demeanor-based explanation from the prosecution).

We have likewise explicitly rejected *per se* rules in the *Batson* context. *See supra* at 12-13. As we have emphasized throughout this Opinion, it is not one factor that leads us to the conclusion that the trial court's factual finding is unsupported by the record. Instead, it is the totality of the circumstances, including the trial court's failure to note Juror 67's demeanor on the record, which leads us to this conclusion. *See Thaler*, 559 U.S. at 49. Therefore, our decision to vacate Appellant's judgment of sentence is consistent with *Thaler*.

neutral explanation offered by the prosecutor was highly implausible when considered in light of the totality of the circumstances surrounding the voir dire process.

It is for this reason that our dissenting colleague's argument that we are "substituting [our] judgment for that of the trial court," **Dissenting Opinion**, **post** at 17, is flawed. Our dissenting colleague cites nothing in the record to indicate that the trial court observed Juror 67 and found that Juror 67's demeanor credibly exhibited the basis for the strike attributed to her by the Commonwealth.

Instead of relying on **Snyder**, which is binding precedent, our learned colleague relies on **Jackson**, which is not binding precedent for the reasons set forth above. Moreover, **Jackson** differs from the factual scenario in the case *sub judice*.

The extensive portion of Judge Beck's opinion quoted by our dissenting colleague did not address the third step of **Batson**. **See Dissenting Opinion**, **post** at 18-19, *quoting* **Jackson**, 562 A.2d at 351 (Beck, J., opinion announcing the judgment of the court). Instead, this language came from Judge Beck's discussion of the second **Batson** step. **See Jackson**, 562 A.2d at 351 (Beck, J., opinion announcing the judgment of the court).[23] Judge Beck only reached the third **Batson** step with respect to jurors who

_____

[23] The defendant in **Jackson** only argued step two of **Batson** with respect to this prospective juror. He argued step three for other prospective jurors.

- 25 -

were challenged because of their alleged familiarity with the location of the crime. **See id.** at 352-354. As noted above, we agree with the trial court, the Commonwealth, and our dissenting colleague that the Commonwealth's proffered rationale for striking Juror 67 satisfied the second step of **Batson**. Our disagreement is with the trial court's finding that Appellant failed to prove purposeful discrimination at step three of the **Batson** analysis.

Although Judge Beck did not reach the third **Batson** step in the portion of the opinion relied on by our dissenting colleague, she did reference it in her analysis of the second **Batson** step. Specifically, she stated that, "A trial judge should not uncritically accept [body language] or any other proffered explanation for a peremptory challenge. Instead, the judge should assess each proffered explanation in light of [his or] her independent recollection of the demeanor and responses of the venire panel members." **Id.** at 351. As noted above, in the case at bar the trial court failed to assess the Commonwealth's proffered explanation for striking Juror 67 in light of its independent recollection of Juror 67's demeanor and responses. Thus, this case is more akin to **Snyder** than to **Jackson** – in which the plurality failed to reach step three of the **Batson** test.

The persuasive value of the Commonwealth's explanation for striking Juror 67 is so low that, when combined with the other factors listed above, the totality of the circumstances indicates that the Commonwealth struck Juror 67 with discriminatory intent. The trial court's finding to the contrary

was clearly erroneous. As such, we conclude that the Commonwealth violated the Equal Protection Clause of the Fourteenth Amendment as interpreted by **Batson**. As a **Batson** violation can never be harmless error, **Commonwealth v. Basemore**, 744 A.2d 717, 734 (Pa. 2000), we vacate Appellant's judgment of sentence and remand for a new trial.

In sum, we conclude that there was sufficient evidence to convict Appellant at trial and Appellant's challenge to the denial of his motions to quash is moot. We conclude, however, that the Commonwealth's peremptory strike of Juror 67 was racially motivated and violated **Batson**. Accordingly, we vacate Appellant's judgment of sentence and remand for a new trial. As explained in note 11 **supra**, because we remand for a new trial we decline to address Appellant's remaining issues which would only entitle him to a new trial.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Judge Musmanno joins this Opinion.

Judge Stabile files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/2/2018