J-S54041-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BRAHEEN ALPHONSO ACRES :
:
Appellant : No. 476 WDA 2018

Appeal from the Judgment of Sentence February 23, 2018
In the Court of Common Pleas of Indiana County Criminal Division at
No(s):  CP-32-CR-0000989-2016

BEFORE:  PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                   **FILED OCTOBER 2, 2018**

Braheen Alphonso Acres (Appellant) appeals from the judgment of

sentence imposed after a jury convicted him of aggravated indecent assault,

burglary,[1] and related offenses.  He challenges the trial court's denial of relief

on his **Batson** and **Brady**[2] claims.  We affirm.

The charges against Appellant originate from a succession of events that

occurred in the early morning hours of September 4, 2016, on or around

Wayne Avenue in Indiana, Pennsylvania.  Brady Moran testified that he was

asleep in his bedroom on Wayne Avenue when he was woken by Appellant,

_____

[1] 18 Pa.C.S.A. §§ 3125(a)(1), 3502(a)(1).

[2] **Brady v. Maryland**, 373 U.S. 83 (1963) (due process is offended when the
prosecution withholds evidence favorable to the accused); **Batson v.
Kentucky**, 476 U.S. 79 (1986) (prosecutorial challenge to potential juror
based solely on race violates Equal Protection Clause).

who he did not recognize, opening his bedroom door. N.T. Trial, 5/23/17, at 107. Appellant told Moran that he was there with Moran's roommates and would lock up when he left, and Moran went back to sleep. In the morning, Moran and his roommate, William Haley, discovered that items were missing from their residence.

Shannon Phillips, who was a guest sleeping in the living room of Moran's residence, corroborated that between 3:00 and 4:00 a.m., she saw Appellant in Moran's bedroom doorway and heard him say "he heard there was a party at the house," but Moran told Appellant there was no party and ordered him to leave. *Id.* at 126-127.

Later that morning, for reasons that are not explained in the record, police called Haley, Moran's roommate, about items missing from the residence, and Haley and Moran went to the police station and claimed them. *Id.* at 111, 115.

Also on the morning of September 4, 2016, Adrianna Lynch was sleeping on the couch at her residence on Wayne Avenue. *Id.* at 22. She woke around 6:15 a.m. and Appellant, who she did not know, was performing oral sex on her. *Id.* at 26-27. Lynch ordered him to leave and "push[ed] him through . . . the kitchen" and out the door. *Id.* at 28. Lynch called the police and gave a statement to Indiana Borough Police Officer Randy Allmendinger. *Id.* at 28-30. The officer subsequently informed Lynch that the police had someone in custody, and Lynch identified Appellant as her assailant. *Id.* at 30-31.

Additionally, Alexandra Stanley testified that on the morning of September 4, 2016, she was woken by a stranger in her bedroom on Wayne Avenue. *Id.* at 96. Appellant, who she did not know, was at the foot of her bed and going through her wallet. *Id.* at 98. Stanley was scared and told him to leave. *Id.* Appellant left, but returned after a couple of minutes and made sexual comments to her. *Id.* at 99. By that time, officers from the Indiana University (IUP) Police Department and Indiana Borough Police Department arrived and apprehended Appellant.[3] *Id.*

IUP Police Lieutenant Melvin Cornell and Indiana Borough Police Lieutenant Justin Schawl testified to responding to a call about a possible burglary at Stanley's apartment. *Id.* at 141, 161. When they arrived, they observed Appellant inside, and after a struggle, apprehended him. *Id.* at 143-147, 163. Items recovered from Appellant's person and a backpack found in Stanley's bedroom matched items missing items from Moran and Haley's residence.

Appellant was charged with, *inter alia*, three counts each of burglary and trespass,[4] two counts each of harassment and theft by unlawful taking,[5] and one count of aggravated indecent assault. The case proceeded to jury

---

[3] Again, the record does not explain who contacted the police.

[4] 18 Pa.C.S.A. § 3503(a)(1)(i).

[5] 18 Pa.C.S.A. § 2709(a)(1), 3921(a).

selection on May 22, 2017.

Pertinent to Appellant's issues on appeal, we note that following *voir dire* examination, the jury pool included two black potential jurors, with the remaining potential jurors being white. The black female juror was selected for the jury, but the Commonwealth exercised a peremptory challenge to the male black juror (Juror #4).[6] Appellant, who is black, objected on the ground the peremptory challenge was discriminatory and illegal under **Batson**.

The trial court conducted a hearing on Appellant's **Batson** challenge. Beth Nestor, a paralegal in the District Attorney's Office, testified that "she reviews the lists of jurors provided by the Jury Commissioners and marks whether they would be a good or bad selection for the Commonwealth." Trial Court Opinion, 5/15/18, at 5. The trial court noted that the Jury Commission's lists do not indicate a potential juror's race, but merely state the name and address. N.T. Motion, 5/22/17, at 7. Nestor testified that she marked Juror #4 "as a 'No'" because she thought, based on the juror's first, middle, and last names, that he was a high school classmate she knew to have a criminal history. **Id.** at 8, 10. Nestor denied that race was a factor in her "No" notation for Juror #4, or that she ever discussed Juror #4's race with the prosecutor. **Id.** at 8-9. However, Nestor acknowledged that she did not check Juror #4's

---

[6] The Commonwealth exercised two other peremptory challenges, both to white males. Appellant's Brief at 5.

criminal history until after Appellant raised the **Batson** claim. **Id.** at 12. At that time, Nestor learned that she was mistaken as to Juror #4's identity — he was not her classmate, but she "guess[ed]" may have been her classmate's father. **Id.** at 10, 12. The trial court was satisfied that the Commonwealth provided a race-neutral explanation for its peremptory challenge — the juror's perceived criminal past — and overruled Appellant's objection. **Id.** at 15.

With regard to Appellant's **Brady** claim, during cross-examination at trial, Officer Allmendinger referred to a "supplemental report" that he prepared when investigating the sexual assault of Lynch. N.T. Trial, 5/23/17, at 58. Appellant, however, was not provided with the supplemental report in discovery. After an opportunity to review the report, Appellant argued that it contained previously unknown information: the names of Lynch's roommates, who he could have interviewed; a description by Lynch of the perpetrator that differed from another description she provided; and the fact that the police had collected Lynch's clothing and "attempted to gain fingerprints." **Id.** at 63. Appellant averred that this information could have led to exculpatory evidence, and that his strategy to cross-examine Officer Allmendinger about the presumed failure to take fingerprints and gather Lynch's clothing for evidence, was undermined. **Id.** at 64, 66. Appellant thus moved for a mistrial pursuant to **Brady**.

The trial court responded that although the Commonwealth's failure to provide the supplemental report was "clearly negligent," it was not intentional,

and the information in the report was consistent with the testimony of both Officer Allmendinger and Lynch. *Id.* at 65, 71. The trial court denied Appellant's request for a mistrial, but ruled that Appellant could cross-examine Lynch with the supplemental report; the Commonwealth could not introduce evidence about any attempt to obtain fingerprints; and the defense could have additional time to locate Lynch's roommates. *Id.* at 69. The following day, Appellant reported that he was unable to contact one roommate and that the other roommate did not provide any "usable" information. *Id.* at 158. Appellant also declined to cross-examine Lynch with the report. *Id.*

Appellant did not testify or present any witnesses. The jury convicted him of all 11 charges. On February 23, 2018, the trial court sentenced Appellant to an aggregate term of 9 to 30 years' imprisonment. Appellant did not file a post-sentence motion, but took this timely appeal. Although the trial court did not order Appellant to comply with Pa.R.A.P. 1925(b), it filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant presents the following issues for our review:

1. Whether or not the trial court erred in failing to sustain [Appellant's] Objection to the Commonwealth's Peremptory Challenge during Jury selection?

2. Whether or not the trial court erred in failing to grant [Appellant's] Motion for Mistrial due to evidence not being provided to [Appellant] that was available to the Commonwealth?

Appellant's Brief at 4.

First, Appellant avers that the trial court erred in not sustaining his

objection to the Commonwealth's peremptory challenge to Juror #4. He maintains that in violation of **Batson**, the Commonwealth improperly used a peremptory challenge to exclude the black juror. While Appellant acknowledges that the Commonwealth's paralegal Nestor "relied on her mistaken belief that" Juror #4 was her high school classmate, he emphasizes that Nestor was mistaken, and thus "[t]he only fact that the prosecution was right about [when it exercised the peremptory challenge] was that [Juror #4] was a black male." **Id.** at 12.

This Court has stated:

"A **Batson** claim presents mixed questions of law and fact." Therefore, our standard of review is whether the trial court's legal conclusions are correct and whether its factual findings are clearly erroneous.

"In **Batson**, the [Supreme Court of the United States] held that a prosecutor's challenge to potential jurors solely on the basis of race violates the Equal Protection Clause of the United States Constitution." When a defendant makes a **Batson** challenge during jury selection:

First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the prima facie showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

**Commonwealth v. Edwards**, 177 A.3d 963, 970-971 (Pa. Super. 2018) (citations omitted).

- 7 -

To establish a prima facie case of purposeful discrimination[,] the defendant must show that he is a member of a cognizable racial group, that the prosecutor exercised a peremptory challenge . . . to remove from the venire members of the defendant's race; and that other relevant circumstances combine to raise an inference that the prosecutor removed the juror(s) for racial reasons.

\* \* \*

The second prong of the **Batson** test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a prima facie case is proven, does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

**Id.** at 972-973 (citations omitted).

In **Edwards**, this Court held that the defendant established a *prima facie* case of purposeful discrimination where the defendant was black, the Commonwealth struck seven prospective jurors, and "the peremptory strike sheet" listed the prospective jurors' race and gender. **Id.** at 973.

Here, unlike **Edwards**, the potential jurors' list provided to the Commonwealth did not indicate the jurors' race, and the Commonwealth explained its reason for striking Juror #4 — his purported criminal history. Furthermore, the Commonwealth did not exercise a peremptory strike against any other black potential jurors. Thus, Appellant has not established a *prima facie* case of purposeful discrimination under the first **Batson** prong. **See Edwards**, 177 A.3d at 972.

Likewise, with respect to the second prong, Appellant disregards the

- 8 -

trial court's acceptance of the Commonwealth's "race neutral" explanation for striking Juror #4. Trial Court Opinion, 5/15/18, at 5. The court credited Nestor's testimony that she marked Juror #4 "as a 'No' only due to his status as a prior [criminal] defendant, not due to his race," and accepted the Commonwealth's desire to not choose a juror with a criminal history as a race-neutral explanation. *Id.* Appellant does not provide — and we are not aware of — any legal authority to support a claim that the Commonwealth's mistaken belief as to a black potential juror's criminal history is a basis for relief under *Batson*. Accordingly, the trial court properly concluded that regardless of what the Commonwealth subsequently learned about Juror #4, the Commonwealth's reason for excluding him — his perceived criminal history — was a proper race-neutral explanation under *Batson*. *See Edwards*, 177 A.3d at 973 ("The second prong of the *Batson* test . . . does not demand an explanation that is persuasive, or even plausible. Rather, the issue at that stage is the facial validity of the prosecutor's explanation.").

Appellant's second claim is that the trial court erred in denying his motion for a mistrial due to a *Brady* violation. He contends that he was denied due process of law because Officer Allmendinger's supplemental report was not provided to him during discovery. Appellant alleges, without further explanation, that the information in the report was "material to the case," that his anticipated cross-examination of Officer Allmendinger was based on facts that were then proven untrue by the report, and that he "was denied the

opportunity to pursue alternative defenses."  Appellant's Brief at 16.

"***Brady*** provides that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment[.]'"  ***Commonwealth v. Ferguson***, 866 A.2d 403, 406 (Pa. Super. 2004) (citation omitted). Pennsylvania Rule of Criminal Procedure 573(B) requires the Commonwealth to disclose "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth[.]"  Pa.R.Crim.P. 573(B)(1)(a).  Rule 573(E) states:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).  However:

> If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial.  The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense.  Rather, material evidence must be favorable to the accused so that, if disclosed and used effectively, it may make the difference between conviction and acquittal.

***Ferguson***, 866 A.2d at 407 (quotation marks and citations omitted).  "A reviewing court is not to review the evidence in isolation, but, rather, the omission is to be evaluated in the context of the entire record." ***Commonwealth v. Haskins***, 60 A.3d 538, 547 (Pa. Super. 2012).

Here, the trial court discussed the Rule 573(E) remedies that it ordered to ameliorate the Commonwealth's failure to provide Officer Allmendinger's supplemental report:

> [T]he defense had an opportunity to contact the individuals named in the report and cross-examine [Lynch] the following day. [A]fter returning to trial, the defense stated that one roommate had no usable information, they were unable to contact the other, and they were satisfied without cross-examining [Lynch] with the report. [N.T. Trial, 5/23/17, at 158.] The fingerprinting evidence was excluded, and no forensic evidence was collected from [Lynch's] clothing. Pursuant to Pa.R.Crim.P. 573(E), such actions as taken by the Court are appropriate in the event of a discovery violation.

Trial Court Opinion, 5/15/18, at 3.

Appellant's **Brady** claim disregards the Rule 573(E) remedies ordered by the trial court, and he does not advance any argument that the remedies were inadequate. Furthermore, Appellant does not acknowledge that he declined to re-cross-examine Lynch and that one of the roommates did not provide any useful information. Finally — and significantly — Appellant does not address with any specificity how the withholding of the report affected the outcome of his trial or the question of his guilt, especially in light of the overwhelming trial evidence against him — the testimony of Moran and Phillips that Appellant entered their residences, Lynch's identification of Appellant as her assailant, Stanley's identification of Appellant as the intruder in her bedroom, and Lieutenants Cornell and Schawl's apprehension of Appellant in Stanley's bedroom and recovery of the items that were missing from Moran and Haley's residence. For these reasons, Appellant is not entitled to relief.

*See Haskins*, 60 A.3d at 547; *Ferguson*, 866 A.2d at 407.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/2/2018