J-S29020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
                                  :
                                  :
                                  :
            v.                        :
                                  :
CHRISTOPHER RAYMOND DAVIS      :
                                  :
           Appellant         :        No. 134 MDA 2023

Appeal from the Judgment of Sentence Entered July 11, 2018
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000270-2013

BEFORE:   MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                 **FILED: MAY 28, 2024**

Appellant, Christopher Raymond Davis, purports to appeal *nunc pro tunc*

from the judgment of sentence entered in the Lebanon County Court of

Common Pleas, following Appellant's jury trial convictions for criminal attempt

(criminal homicide) and two counts of aggravated assault.[1]  We reverse in

part, vacate in part, and remand for further proceedings.

A prior panel of this Court set forth the relevant facts and some of the

procedural history of this case as follows:

> [Appellant] was working as a bouncer at Woofer Magoo's
> (the Bar) on the night of March 2, 2012. That night, the
> victim, Jose Pacheco, went to the Bar with Jeremy Grose
> and the woman Pacheco was dating at the time, Dianna
> Lebron. Pacheco left the Bar at approximately 1:30 or 2:00

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901 (section 2501 related) and 2702.

A.M., but Lebron did not leave with him. Thereafter, Pacheco tried to get back into the Bar, but [Appellant] prevented his re-entry. Pacheco punched [Appellant], and the two continued to fight outside of the Bar until it was broken up by another bouncer. [Appellant] was visibly upset when he returned to work at the Bar.

Later, [Appellant] and Pacheco met in a parking lot on the corner of 7th and Willow Streets ("Willow Street Lot"), where they began to fight each other; no one else joined in on the fight. Around the same time, Sergeant Jeffrey Marley of the Lebanon Police Department was on patrol near the 700 block of Willow Street. He noticed several people standing in the Willow Street Lot, and saw people making gestures in a manner that suggested a fight had occurred or was about to occur. Sergeant Marley saw Grose shove Pacheco into a van, which sped out of the Willow Street Lot. Sergeant Marley engaged his emergency lights and followed the van to Good Samaritan Hospital. Grose then jumped out of the van covered in blood screaming, "his boy got stabbed." N.T. Trial, 11/6/13, at 9. Grose told Sergeant Marley that the stabbing occurred at the Willow Street Lot.

Pacheco was in the back of the van, "very pale in color" and "appeared to be lifeless." *Id.* at 10. Hospital personnel escorted Pacheco into the hospital and determined he had been stabbed approximately 11 times. Sergeant Marley questioned Pacheco as he was fading in and out of consciousness. Pacheco indicated that a bouncer stabbed him. Sergeant Marley asked if the bouncer was from Woofer Magoo's and Pacheco nodded in the affirmative.

At trial, Vivian Rodriguez testified that she was at the Bar until approximately 2:00 A.M. on the night of the altercation. When she left the Bar, she noticed [Appellant] also leave and walk toward the Willow Street Lot. *Id.* at 38. She stated that she observed [Appellant] fighting in the lot with another person she did not know. *Id.* at 38-39. She also testified that she observed [Appellant] making stabbing motions during the fight. *Id.* at 39. She then witnessed the other person fall to the ground, at which point she observed [Appellant] run away from the scene. *Id.* at 39, 42.

Grose testified that he and [Appellant's] cousin, Jermel Davis (Mel), were the closest to the fight. He stated Mel was approximately 10 to 20 feet away from [Appellant] and Pacheco, circling around the fight. *Id.* at 175. Grose explained that he turned away for a moment, but when he looked back, he saw Pacheco with stab wounds, and no one other than [Appellant] was standing near Pacheco. *Id.* at 175-76.

After the fight, Detective Keith Uhrich of the Lebanon City Police Department surveyed the Willow Street Lot, where he found trails of blood, two hats, and two knives. *Id.* at 21, 22–23. One knife had an eagle on it, and the other knife was a box cutter. The knife with the eagle on it had blood on the handle and the blade. *Id.* at 29. Later, Detective William Walton sought to locate [Appellant]. He went to the home of Andrew Robinson, a bouncer at the Bar, but [Appellant] was not with him. Robinson explained that [Appellant] left the bar with Mel, and suggested that [Appellant] and Mel may be at Mel's girlfriend's house. Detective Walton went to Mel's girlfriend's house, where they found Mel's girlfriend sitting in a red van. Detective Walton searched the red van and found a knife similar to the knife found at the Willow Street Lot, and a small amount of blood on the van's passenger door exterior. *Id.* at 207–10. Despite Detective Walton's best efforts, he was unable to locate [Appellant]. *Id.* at 214.

[Appellant] was later found in New York, and on May 16, 2012, he was arrested and charged with the above-named offenses. *Id.* at 214. On November 6, 2013, a jury found [Appellant] guilty on all counts and, on September 7, 2016, the trial court sentenced him to 20 to 40 years' imprisonment. On October 5, 2016, [Appellant] filed a notice of appeal. Subsequently, on July 3, 2017, [Appellant] sought remand on the basis of newly-discovered evidence in the form of a witness who claimed to have witnessed the fight and who would testify that [Appellant] did not stab Pacheco. On August 8, 2017, this Court granted [Appellant's] motion for remand and vacated [Appellant's] judgment of sentence. *Commonwealth v. Davis*, 1677 MDA 2016 (Pa.Super. filed 8/8/17) (unpublished memorandum decision) [("*Davis I*")].

On October 23, 2017, the trial court held an evidentiary hearing on the newly-discovered evidence claim. On June 20, 2018, the trial court denied [Appellant's] motion for a new trial and ordered [Appellant] to appear for the re-imposition of sentence on July 11, 2018, at which point the trial court re-imposed the original sentence. [Appellant] filed a timely post-sentence motion on July 20, 2018, which the trial court also denied [on November 19, 2018]. On December 5, 2018, [Appellant] filed a timely notice of appeal to this Court followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

*Commonwealth v. Davis*, No. 2008 MDA 2018, unpublished memorandum at 1-5 (Pa.Super. filed Sept. 27, 2019) ("*Davis II*"), *appeal denied*, 657 Pa. 327, 225 A.3d 810 (2020).

On September 27, 2019, this Court affirmed Appellant's judgment of sentence.[2] *See id.* Our Supreme Court denied allowance of appeal on February 18, 2020. The trial court summarized the subsequent procedural history as follows:

---

[2] Appellant raised six issues on direct appeal challenging: (1) the sufficiency of the evidence for all charges; (2) the weight of the evidence; (3) the failure to grant Appellant a new trial based on newly-discovered evidence; (4) the substitution of the trial judge during Appellant's trial; (5) the court's failure to preserve Appellant's trial transcripts; and (6) the denial of Appellant's post-sentence motion. This Court addressed issues one through three on the merits and did not address issue six because it merely incorporated the previous arguments. This Court deemed issue four waived for failure to raise the objection at trial or in his post-sentence motion, and we deemed issue five waived for failure to raise the objection in his post-sentence motion. Moreover, regarding issue five, this Court stated that the claim would not merit relief in any event because the trial transcript was located and filed of record on November 20, 2017, such that the notes of testimony were available to Appellant in ample time to prepare his post-sentence motion and appellate brief. *See id.*

Thereafter, [on June 2, 2020, Appellant timely] filed a Petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 *et seq*. [Appellant subsequently filed amendments to his PCRA petition.] We conducted a hearing on his Third Amended PCRA Petition on September 6, 2022. At the conclusion of the hearing, we entered an Order stating, in part, that "[Appellant's] post-sentence rights, by agreement, have been reinstated. Filing of the post-sentence motion shall be [deferred] until the [c]ourt issues [its] final opinion in this matter." On December 15, 2022, we issued an Order denying [Appellant's] claim for PCRA relief. On January 4, 2023, [Appellant] filed his Post-Sentence Motion. We denied that Motion as untimely by Order of January 12, 2023 [because Appellant did not file his post-sentence motion within 10 days of the court's December 15, 2022 order.] [Appellant] … filed an appeal of that Order [on January 23, 2023. The next day, the court ordered Appellant to file a concise statement of errors per Pa.R.A.P. 1925(b), which Appellant filed on February 10, 2023].

(Trial Court Opinion, filed March 24, 2023, at 5-6).

Appellant raises five issues for our review:

Whether the trial court erred in denying [Appellant's] post-sentence motion as untimely when the court reinstated [Appellant's] direct appeal though order dated September 6, 2022, did not advise [Appellant] that a new notice of appeal must be filed within 30 days in violation of Pa.R.Crim.P. 908, and granted [Appellant] leave to file said post-sentence motions but deferred said filing until the court issued an opinion on [Appellant's] third amended PCRA petition.

Whether the trial court erred in allowing the substitution of the presiding judge, Judge Kline, with President Judge Tylwalk during jury deliberation in violation of Pa.R.Crim.P. 601.

Whether the trial court erred in failing to preserve a full and complete transcript of the November 6, 2013, jury trial and thus deprived [Appellant] of a meaningful appellate review.

- 5 -

Whether the trial court erred in allowing the admission of [Appellant's] recorded phone calls when their probative value was outweighed by a danger of unfair prejudice and misleading the jury in violation of Pa.R.E. 403.

Whether the trial court erred in failing to obtain a [pre-sentence investigation ("PSI") report] prior to [Appellant's] sentencing on September 7, 2016 and July 11, 2018 in violation of Pa.R.Crim.P. 702.

(Appellant's Brief at 4-5).

In his first issue, Appellant acknowledges that when a court grants PCRA relief and permits post-sentence motions to be filed *nunc pro tunc*, the post-sentence motions must be filed within 10 days. Nevertheless, Appellant argues that where a trial court misadvises an appellant about his post-sentence and/or appellate rights, this Court can excuse the untimeliness of the post-sentence motions and subsequent appeal. Appellant emphasizes that the only direction Appellant received from the court in the September 6, 2022 order reinstating his appellate rights was that he should defer filing his post-sentence motions until final disposition of his remaining PCRA claims. Appellant maintains that the court lacked jurisdiction to address the merits of Appellant's remaining PCRA claims once it reinstated his appellate rights *nunc pro tunc*. Appellant claims the court essentially advised him to file an untimely appeal by informing him to wait to appeal until disposition of his PCRA claims. Appellant contends that extraordinary circumstances exist in this case to overlook the untimely filing of the post-sentence motions *nunc pro tunc* and notice of appeal *nunc pro tunc*. Appellant also emphasizes that the court's

September 6, 2022 order and instructions at the PCRA hearing failed to inform Appellant about the time limits for filing an appeal. Appellant concludes that a breakdown in the operations of the court occurred in this case to excuse his untimely filings. We agree.

As a prefatory matter, we observe that "once a PCRA court determines that a petitioner's right to direct appeal has been violated, the PCRA court is precluded from reaching the merits of other issues raised in the petition." *Commonwealth v. Harris*, 114 A.3d 1, 3-4 (Pa.Super. 2015) (internal citation omitted). "Rather, once the PCRA court finds that the petitioner's appellate rights have been abridged, it should grant leave to file a direct appeal and end its inquiry there." *Id.* at 5 (internal citation omitted). In other words, once the PCRA court grants a petitioner the right to seek further review *nunc pro tunc*, the petitioner's judgment of sentence is no longer final, and the PCRA court lacks jurisdiction to rule on the remaining PCRA claims.[3] *Id.* at 6.

"In those cases in which a petitioner under the [PCRA] has been granted leave to file a post-sentence motion or to appeal *nunc pro tunc*, the filing of the post-sentence motion or the notice of appeal must comply with the timing

---

[3] The *Harris* Court noted that where the PCRA court has already conducted hearings on the petitioner's remaining PCRA claims, "the PCRA court may use the already developed evidentiary record and may supplement that record as it sees fit" in the event the petitioner raises the same claims in a properly filed PCRA petition following exhaustion of direct appeal rights in connection with the reinstated appeal. *Id.* at 6 n.4.

- 7 -

requirements contained in paragraph (A) of [Pa.R.Crim.P. 720]." Pa.R.Crim.P. 720, *Comment*. **See also** Pa.R.Crim.P. 720(A)(2) (stating that post-sentence motion shall be filed within 10 days after imposition of sentence; if defendant timely files post-sentence motion, notice of appeal shall be filed within 30 days of entry of order deciding motion or within 30 days of entry of order denying motion by operation of law); **Commonwealth v. Mitchell**, No. 299 WDA 2023 (Pa.Super. Dec. 7, 2023) (unpublished memorandum)[4] (explaining that when petitioner's post-sentence and appeal rights are reinstated, post-sentence motion must be filed within 10 days of order reinstating post-sentence rights and notice of appeal must be filed within 30 days of order reinstating appeal rights, or within 30 days of order denying post-sentence motions). Significantly, the timeliness of an appeal is a jurisdictional requisite. **Commonwealth v. Powell**, 290 A.3d 751, 755 n.8 (Pa.Super. 2023).

Instantly, at the PCRA hearing on September 6, 2022, the Commonwealth agreed to reinstatement of Appellant's right to file post-sentence motions in lieu of litigating Appellant's claims of ineffective assistance of counsel based on appellate counsel's failure to preserve certain issues in post-sentence motions, which had led to this Court's waiver of claims on direct appeal. (**See** N.T. PCRA Hearing, 9/6/22, at 6). The parties then proceeded to an evidentiary hearing concerning Appellant's remaining PCRA

---

[4] **See** Pa.R.A.P. 126(b) (stating that we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

claims. At the conclusion of the hearing, the court stated: "[Appellant's] post-sentence rights, by agreement, have been reinstated. Filing of the post-sentence motions shall be [deferred] until the [c]ourt issues [its] opinion in this matter." (*See id.* at 93-94).

Once the court reinstated Appellant's post-sentence and appellate rights *nunc pro tunc*, however, it lost jurisdiction to entertain any remaining PCRA claims. *See Harris, supra*. Thus, we vacate the portion of the court's December 15, 2022 order addressing Appellant's PCRA claims for lack of jurisdiction. Further, Appellant's post-sentence motions *nunc pro tunc* were due 10 days after the September 6, 2022 order reinstating those rights.[5] *See* Pa.R.Crim.P. 720(A)(2); *Mitchell, supra*. Under these circumstances, the court's advice to defer filing the post-sentence motions was erroneous, constituting a breakdown in the operations of the court. *See id.* (observing that breakdown in operations of court occurs where trial court fails to advise defendant or misadvises defendant about his post-sentence and/or appellate rights; attributing appellant's late filings to court misinforming appellant that he had 30 days to file post-sentence motion after reinstatement of appellant's post-sentence and appellate rights *nunc pro tunc*). Consequently, we decline

---

[5] Thus, we disagree with the trial court's analysis that the "trigger date" for filing the post-sentence motions *nunc pro tunc* was the court's December 15, 2022 order denying PCRA relief. (*See* Trial Court Opinion at 6). Because the court lacked jurisdiction to rule on the PCRA issues once it reinstated Appellant's appeal rights, the court's December 15, 2022 filing is a nullity.

to quash this appeal as untimely.

As a second preliminary matter, we observe "that the reinstatement of direct appeal rights is not the proper remedy when appellate counsel perfected a direct appeal but simply failed to raise certain claims." *Commonwealth v. Grosella*, 902 A.2d 1290, 1293 (Pa.Super. 2006). It is only in those "extreme circumstances, where counsel has effectively abandoned his or her client and cannot possibly be acting in the client's best interests, [where] our Supreme Court has held that the risk should fall on counsel, and not his client." *Id.* Conversely, "[w]here a petitioner was not **entirely** denied his right to a direct appeal and only some of the issues the petitioner wished to pursue were waived, the reinstatement of the petitioner's direct appeal rights is not a proper remedy." *Id.* at 1293-94 (emphasis in original) (collecting cases distinguishing between those involving failures that completely foreclosed appellate review with those that merely narrowed its ambit).

In *Grosella*, this Court *sua sponte* addressed whether the PCRA court had properly reinstated the appellant's direct appeal rights *nunc pro tunc*, where the appellant had already enjoyed the benefit of a direct appeal. This Court held that the PCRA court erred in doing so, explaining:

> Although appellate counsel apparently did not pursue all of the issues [the a]ppellant wished to raise on direct appeal, this is not a case where appellate counsel failed to perfect a direct appeal. Unlike those cases where we concluded the reinstatement of a direct appeal was necessary, appellate counsel in this case took the steps necessary to ensure that this Court would consider the one argument he presented on appeal. …

- 10 -

> Simply put, appellate counsel did not effectively abandon [the a]ppellant such that [the a]ppellant was entirely denied his right to a direct appeal. Therefore, the PCRA court should have considered [the a]ppellant's ineffective assistance of appellate counsel claims under the auspices of the PCRA and applied the traditional three-prong ineffective assistance of counsel test.

*Id.* at 1294 (internal footnote omitted). Therefore, this Court reversed and remanded to the PCRA court to consider all claims raised in the appellant's timely filed PCRA petition. *See also Commonwealth v. Pulanco*, 954 A.2d 639 (Pa.Super. 2008) (holding that PCRA court erred by reinstating appellant's right to file Rule 1925(b) statement *nunc pro tunc*, which essentially restored appellant's direct appeal rights *nunc pro tunc*; although parties had agreed to reinstatement of appellant's appellate rights, because appellant previously had direct appeal during which this Court addressed some of his issues, he was not entitled to reinstatement of his direct appeal rights *nunc pro tunc*; appellant was required to avail himself of PCRA process, and PCRA court was required to conduct analysis on issues raised in PCRA petition).

Here, Appellant already enjoyed the benefit of a direct appeal. *See Davis II, supra*. As previously stated, Appellant raised six issues on appeal (one which this Court did not address separately because it incorporated by reference the prior claims). This Court addressed the merits of three issues challenging the sufficiency of the evidence, the weight of the evidence, and the failure to grant a new trial based on newly-discovered evidence. Nevertheless, this Court deemed two of the issues waived for failing to

- 11 -

preserve them in the post-sentence motion. *See id.* Therefore, direct appeal counsel did not completely foreclose appellate review but simply "narrowed its ambit." *See Grosella, supra*. Consequently, the PCRA court erred by reinstating Appellant's post-sentence motion and direct appeal rights *nunc pro tunc* without considering Appellant's ineffectiveness claims related to the failure to preserve certain issues in post-sentence motions under the traditional three-prong test for ineffective assistance of counsel. *See id.* We recognize that the Commonwealth agreed to reinstatement of Appellant's post-sentence motion and direct appeal rights. Nevertheless, the PCRA court simply lacked authority to grant this type of relief. *See Pulanco, supra*.

Based upon the foregoing, we vacate the December 15, 2022 order addressing Appellant's PCRA claims, reverse the September 6, 2022 order reinstating Appellant's post-sentence motion and direct appeal rights *nunc pro tunc*, and remand for the PCRA court to decide all claims properly preserved in Appellant's third amended PCRA petition, with any ineffectiveness claims to be analyzed under the traditional three-prong test.[6]

Case remanded to PCRA court with instructions. Jurisdiction is relinquished.

---

[6] As previously stated, the court may rely on the evidentiary hearings already held on some of the PCRA claims, and supplement the record if necessary, upon remand. *See Harris, supra*.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/28/2024